N. WETMORE HALSEY, TRADING, &c., RELATOR, v. JOSEPH
E. NOWREY, MAYOR OF THE CITY OF CAMDEN.

Argued November 1, 1904—Decided December 17, 1904.

1. A *mandamus* will issue directing the mayor of a city to sign and
   seal municipal bonds duly authorized, where, under the municipal
   ordinance and the city charter he is charged with the duty of
   signing and sealing such bonds, and where no legal reason or
   discretionary right for his refusing so to do appears.
2. The act entitled "An act respecting the expenditure of money in
   cities of the second class in this state," approved March 23d, 1892
   (*Pamph. L., p.* 202), is local and special and unconstitutional
   under article 4, section 7, paragraph 11.

On rule to show cause why a *mandamus* should not issue.

Before Justices FORT and PITNEY.

For the rule, *Edmund B. Leaming.*

*Contra, Howard Carrow.*

The opinion of the court was delivered by

FORT, J. This is an application for a *mandamus,* to be di-
rected to the mayor of the city of Camden, requiring him
to affix his signature and the seal of the city to certain
park bonds, duly authorized to be issued by the common
council.

By "An act to amend the charter of the city of Camden,"
approved February 14th, 1871, it is enacted "that it shall be
the duty of the mayor to keep the corporate seal of the city, to
cause the laws and ordinances to be duly executed and en-
forced, and generally to perform all such duties as may be re-
quired of him by the ordinances of said city." *Pamph. L.*
1871, *p.* 232, § 39.

By section 8 of the revised ordinances of the city, as in evidence in this cause, it is provided that the mayor "shall cause the city seal to be affixed to such instruments and writings as he may be authorized to do by any ordinance or resolution of the city council." And by section 9 of said ordinance it is made the duty of the mayor to execute all contracts made on behalf of the city, &c.

The bonds in question were authorized to be issued by an ordinance of the city council, duly passed upon the 26th day of May, 1904.

Bids for said bonds were advertised for, and the relator was the highest bidder therefor, and the city council awarded the same to him. Notwithstanding all the proceedings for the issuance of said bonds were regular, and the same were signed by the city comptroller and city treasurer, as required by the ordinance authorizing their issuance, and that the relator tendered himself ready to take and pay for the same pursuant to his bid, the mayor refused to affix his signature or the seal of the city thereto.

There is no controversy as to the facts in this case.

Three grounds are alleged for the refusal of the mayor to sign and seal the bonds. They are

*First.* "Because the public only is concerned in the issuance of the bonds; the relators, non-residents of this state, have no such interest as will entitle them to a *mandamus.*"

This reason is fully covered by the decision of the Court of Errors and Appeals in *Jones* v. *Guttenberg*, 37 *Vroom* 659. The claimants here, as they were in Jones *v.* Guttenberg, are the purchasers of the bonds, and in that case the court said: "If the claimants' right is clear, and they have no other adequate remedy, *mandamus* is the proper remedy to enforce the performance by public boards of purely ministerial duties." Here the duty of the mayor is purely ministerial. The claimant's right to the bonds is clear, and he is without other adequate specific remedy.

Upon the refusal of a mayor to sign a contract made in pursuance of the charter and ordinances of a city, and which

it is his duty to sign, any party in interest in such contract is entitled to a writ of *mandamus* to compel performance of the duty. *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Vroom* 396.

Nor is the fact that the relator is a non-resident of any importance. The courts of this state will enforce a duty owing by a citizen of this state to citizens of another state as they will a duty owing by one of our own citizens to another of our own citizens.

*Second.* "Because the ordinance, providing for the purchase of the park and the executing of the contract for the purchase of the same, was vetoed by the mayor and council did not repass the ordinance over his veto."

The brief of the defendant's counsel does not cite any statute to sustain his contention that the mayor of the city of Camden has any veto power, and it is contended that he has none, under the city charter or its supplements, or by virtue of any law applicable to said city. We have found no act conferring that power upon him, and but for some statute so authorizing, a mayor or other executive head of a city or other municipality has no veto power over the action of the representatives of the people. But, if we had found authority giving the mayor a veto power, we doubt whether what is alleged as a veto was in fact a veto of the ordinance authorizing the issuance of the bonds in question. The mayor seems to have sent a message to council under date of June 30th, 1904, but it nowhere appears therein that the *ordinance* was vetoed. He refers to his refusal to give his approval to the contract authorized by the ordinance, but nowhere refers to the ordinance or states that it was the ordinance which he was refusing to approve. There is a contract in the record, and it was undoubtedly that at which the so-called veto of the mayor was directed.

*Third.* "Because the *resolution* providing for the issuance of the park bonds was not submitted to the mayor for his approval, as provided by the acts of 1892 (*Pamph. L., p.* 202) and 1904 (*Pamph. L., p.* 290)."

The record does not show the passage of any *resolution* authorizing the issuance of the bonds for park purposes. They were authorized and directed by section three of the *ordinance* of May 26th, 1904. The only resolution in the record is one authorizing the finance committee to sell, at public auction, the bonds ordered issued, by ordinance, at the meeting of council on May 26th, 1904. This resolution also authorized the sale of $125,000 of school bonds and $25,000 of fire bonds, as well as the $90,000 of park bonds. The resolution, however, in no way authorized the issuance of the bonds; it only authorized the sale of the bonds already authorized to be issued by ordinance.

The act relied upon to sustain this reason is the act approved March 23d, 1892. *Pamph. L., p.* 202. This act is unconstitutional, and hence would not have availed in this case had the issuance of the bonds been authorized by *resolution*. The act is entitled "An act respecting the expenditure of money in cities of the second class in this state." It reads as follows:

"1. That in all cities of the second class in this state no resolution or motion involving the expenditure of money adopted or passed by the board of aldermen or common council thereof, when the amount thereof exceeds the sum of fifty dollars, shall be operative, unless the same be approved by the mayor of such city; *provided, however,* that if the said mayor veto the same, or refuse or neglect to veto or approve the same within five days after the adoption of the same, the board of aldermen or common council of such city, after the expiration of said time, and by a vote of three-fourths of all the members thereof, may order the payment of the money in such resolution or motion provided, notwithstanding such veto or refusal or neglect to veto or approve any such resolution or motion."

Upon what theory this act can be sustained as a general act, I am at a loss to see. It relates to second class cities only. There is no basis for the classification of cities of the second class in this act which furnishes a reason for applying this

act to such cities, as contradistinguished from all cities, or from cities of the first or third class. Why, in cities of the second class, a "resolution or motion involving the expenditure of money * * * when the amount exceeds fifty dollars," should not be operative without the approval of the mayor, while in other cities it might be, I am at a loss to see.

This court held that an act conferring upon all cities, having a population of not less than twenty-five thousand inhabitants, the power to issue bonds to fund their floating debt, was special, under the constitutional amendment, which forbids special laws "regulating the internal affairs of towns." *Anderson* v. *Trenton,* 13 *Vroom* 486.

In the case just cited, Mr. Justice Dixon said: "I am unable to see any natural connection between the number of people in a city and its right to fund its floating debt. It.is true that there may be some propriety in denying this authority to every small municipality and granting it to larger ones, but the same may be said of almost every power so possessed by cities. And it is manifest that if the classification made by a statute is to be justified or not, by considering whether it is proper to apply the peculiar provisions of the law to the particular individual or individuals designated to be affected, then laws will be upheld or overthrown, not as the courts shall decide them to be general or special, but as they shall deem them wise or unwise. No rule heretofore laid down in this state sanctions such a test of constitutionality, nor do I think that such a criterion should be adopted."

Applying the same reasoning to the act of March 23d, 1892, it must fall under the constitutional inhibition against special legislation.

The following cases will be found in point upon the principle here enunciated: *State* v. *Hammer,* 13 *Vroom* 435, 440; *Rutgers* v. *New Brunswick, Id.* 51; *Van Giesen* v. *Bloomfield,* 18 *Id.* 442; *Helfer* v. *Simon,* 24 *Id.* 550; *Grey, Attorney-General,* v. *Town of Union,* 38 *Id.* 363; *Lane* v. *Otis,* 39 *Id.* 656.

I am unable to find any act applicable to this question in the laws of 1904 (*Pamph. L.*, at *p.* 290), as cited in the reason now under consideration. There is an act in the laws of 1904 (*Pamph. L.*, at *p.* 283) relating to bonds for improving public parks, but it has no bearing upon the question before us.

We conclude that a writ of peremptory *mandamus* should issue. No dispute exists as to any fact in the case, and therefore no occasion exists for the issuance of an alternative writ, the office of which is to determine disputed questions of fact. *Cleveland* v. *Board of Finance*, 9 *Vroom* 259, 266; *Hugg* v. *Camden*, 10 *Id.* 620, 624; *Kelly* v. *Mayor of Paterson*, 6 *Id.* 196.

A peremptory writ of *mandamus* will issue.