## DIEFENDERFER, MAYOR, ET AL. v. STATE EX REL. FIRST NATIONAL BANK OF CHICAGO ET AL.

MANDAMUS—MUNICIPAL CORPORATIONS—MUNICIPAL BONDS—BIDS—ACCEPTANCE — SALE OF BONDS — APPEAL AND ERROR — RIGHT OF TOWN OFFICER TO APPEAL FROM JUDGMENT IN MANDAMUS COMPELLING ISSUANCE OF TOWN BONDS AFTER THE TOWN HAS ACQUIESCED IN AND ATTEMPTED TO COMPLY WITH THE JUDGMENT—STATUTES—STATUTORY CONSTRUCTION—CERTIFICATE OF LEGALITY OF BONDS—EXPIRATION OF TERM OF OFFICE OF MAYOR AND CLERK AS AFFECTING RIGHT OF APPEAL.

1. Mandamus lies to compel the issuance and delivery of valid municipal bonds to a party entitled thereto under an accepted bid.

2. Where an incorporated town, together with its Mayor, Clerk, Treasurer and Councilmen, were joined as defendants in a ·mandamus suit to compel the issuance and delivery of the town refunding bonds to the relator, under an alleged contract between the relator and the town, the issue of such bonds having been provided for by ordinance, except that the date thereof had not been fixed thereby, and a judgment was rendered requiring such bonds to be issued and delivered as of a subsequent specified date, to be signed

by the Mayor and Clerk; and thereafter the Council adopted a resolution in compliance with the judgment, recognizing the contract, and providing that the bonds should be issued and delivered to the relator as required by the judgment; and it appearing that the only defense interposed in the mandamus suit was, in effect, that the town was under no obligation to the relator in the premises, and none of the issues went to the right of either of the town officers to refuse performance if a valid contract existed between the town and relator; *Held,* that the action of the Council, after judgment, in accepting the judgment as a finality, and ordering a compliance therewith, withdrew from further controversy every issue determined by the judgment, so as to prevent a review on error brought by the Mayor, Clerk and one member of the Council; the town itself not appealing, and neither the issue of the bonds nor the contract of sale being illegal.

3. The corporate board of the town had the right to accept the judgment in the mandamus suit as a finality, and to proceed to comply with it, so as to prevent a review of the judgment on the petition in error of the Mayor, Clerk and one member of the Council, in the absence of any illegality in the bond issue or contract of sale.

4. If the acceptance by the town through its corporate authorities of a bid for its refunding bonds is to be regarded as premature because no specific provision had then been made for calling in the outstanding bonds proposed to be refunded, such objection would be cured by a proper subsequent resolution making such provision.

5. The mere fact that a better bid is subsequently received will not authorize a town to ignore its acceptance of a valid bid for proposed refunding bonds.

6. Where a town has provided by ordinance, as permitted by statute, for the issuance of refunding water bonds, and thereupon has entered into a complete acceptance of a bid for such bonds without advertisement for bids, neither the statute nor ordinance then requiring bids to be advertised for, such acceptance and the contract thereby made, cannot be invalidated, as against such bidder, by a subsequent ordinance providing that bids shall be advertised for, or the town's solicitation and reception of other bids thereunder.

7. The statute which confers upon "the Mayor and Council" of an incorporated city or town the power to issue the bonds of the municipality for specified purposes confers the power upon

the governing body of the city or town, consisting of the Mayor and Council, having regard to the usual prerogatives of the Mayor and Council, respectively; and, where the issuance of bonds is required to be provided for by ordinance, and the Mayor is not given a vote upon questions before the Council except in case of a tie, and though he may veto an ordinance, it may be passed over such veto by a two-thirds vote of the members of the board· or Council, the Mayor is not vested with independent authority in the matter of the issuance of the bonds, so that he can prevent their issuance by merely withholding his consent.

8. The Clerk of an incorporated town having no voice in passing ordinances or resolutions, is bound by a valid act of the corporate board, though he may disapprove it; and is, therefore, bound by a valid resolution of the board for the issuance and delivery of refunding bonds.

9. A member of the Town Council has a right to vote upon a resolution for the issuance of refunding bonds to a bidder therefor, such bonds having been provided for by ordinance, but he is bound by the valid act of the majority in passing the resolution, though he may have voted against it; and he has no individual right to demand the review on error of a judgment in mandamus requiring the issuance of the bonds, where the Town Council has voted to comply with the judgment, and directed the issuance and delivery of the bonds as thereby required.

10. In a mandamus suit to compel the issuance and delivery of town refunding bonds to relator upon its accepted bid therefor, it was unnecessary for the relator to show the regularity of the proceedings for the issuance of the outstanding bonds proposed to be refunded by the new bonds, where the petition alleged such former bonds to have been duly issued and to constitute a valid and existing indebtedness of the town, and the answer expressly admitted their due issuance for the purposes stated in the petition, and no suggestion to the contrary was made upon the trial.

11. The statutory provision that municipal bonds shall not be sold for less than their par value and accrued interest is not violated by a sale of such bonds upon a bid to pay par therefor, the town to pay $250 to cover all expenses; where, at the date of such bid, and its acceptance, the date of the bonds had not been fixed, and there was no accrued interest.

12. The condition that the town should pay $250 to cover all expenses is not to be construed as bringing the purchase

price below par in the absence of any intimation in the
record that the expense referred to was other than the
estimated cost of preparing the bonds, or of a purpose to
evade the statutory requirement as to terms and conditions
of sale.

13. A purchaser of municipal bonds is not required to bear the
expense incident to the preparation of the bonds, unless he
agrees to do so, but, in the absence of a contrary arrange-
ment, it would be the duty of the municipality to cause the
bonds to be prepared, issued and delivered, and to defray
the necessary expense thereof, and the fact that it agrees
to do so will not render a sale of the bonds at par invalid
as bringing the sale price below par.

14. The fact that the Mayor, Clerk and the member of the
Town Council who instituted the proceedings in error were
permitted to give, and did give, a supersedeas bond, does
not have the effect to authorize a review of the judgment
for the determination of the controversies fully settled by
the act of the Town Council since the judgment.

15. The fact that the terms of office of the Mayor and Clerk
may have expired since the taking of an appeal by them
from a judgment in mandamus requiring the town to issue
and deliver certain bonds to the relator, and requiring
such Mayor and Clerk to sign and execute the bonds, would
not be a sufficient reason for a reversal of the judgment.

16. The constitution provides that "no bond or evidence of debt
of any county, or bond of any township, or other political
subdivision, shall be valid unless the same shall have en-
dorsed thereon a certificate signed by the County Auditor
or other officer authorized by law to sign such certificate,
stating that the bond or evidence of debt is issued pursuant
to law and is within the debt limit." Before the Legislature
had enacted a law designating the officer to sign a cer-
tificate of legality upon bonds of a city or town, a town
ordinance required the Mayor to sign such certificate, upon
certain proposed bonds, and afterward, before the issuance
of the bonds, an act was passed by the Legislature requiring
the Clerk to sign the certificate; *Held,* that the ordinance
would not become necessarily void, but its effect might be
to require the Mayor, as well as the Clerk, to certify as to
the legality of the bonds; and that when the ordinance
was adopted the Town Council had authority to designate
the officer to sign the certificate.

[Decided April 25, 1905.]                    (80 Pac., 667.)

Error to the District Court, Sheridan County, Hon. Joseph L. Stotts, Judge.

Mandamus to compel the issuance to relator of certain refunding water bonds of the town of Sheridan. Heard on motion to dismiss proceedings in error. The facts are stated in the opinion.

*W. S. Metz, C. L. Sackett* and *S. T. Corn,* for defendants in error (in support of the motion).

Though the Mayor and Council are named as defendants, the proceeding is against the city and does not assume the character of a proceeding against the individuals unless it becomes necessary to issue an attachment. (Louisville v. McKean, 18 B. Mon., 13; Maddox v. Graham, 2 Metc. (Ky.), 71; Campbell v. Hall (Wash.), 69 Pac., 12.) The Town Council having acquiesced in the judgment and done all that it could do to require the issuance of the bonds in controversy, the plaintiff in error having mere ministerial duties to perform in the premises, have no appealable interest and no right to demand a review of the judgment. (Williams Estate, 122 Cal., 76; Bryant v. Thompson, 128 N. Y., 426; Labette County v. U. S., 112 U. S., 217; Cherokee v. Wilson, 109 U. S., 621; State v. City, 15 Wis., 41; 28 La. Ann., 30; Gurlbran v. Detrege, 32 id., 909; Garner v. Prewitt, 32 Ala., 13; Foster v. Smith, 115 Cal., 611; Worth v. Worth, 63 N. E., 917; Betts v. State, 93 N. W., 167; Mills v. Green, 159 U. S., 653; Thomson-Houston Co. v. Nasson, 119 Fed., 354; San Diego v. Supervisors, 97 Cal., 438.) Appellate court cannot assume jurisdiction, nor express opinions which will be of any binding force, unless involved in a controversy between adverse parties; and when the order has been obeyed or there is no controversy pending, the appeal must be dismissed. (Jacksonville v. Crowell (Ore.), 52 Pac., 693; 2 Spelling App. Proc., 650; Wash. M. Co. v. Dist., 137 U. S., 62; Thompson v. U. S., 103 U. S., 480.)

Counsel also cited upon the general proposition involved in the motion to dismiss the following additional authori-

ties. (Dillon Mun. Corp., 663, and note; 2 Ency. Pl. & Pr., 160; McGregor v. Pearson, 51 Wis., 122; Wiggins v. Servant, 39 Am. Dec., 716; McComb v. Little Gantz Co., 75 N. W., 1128; Start v. Martin, 32 So., 726; Sullivan v. Gary, 92 N. W., 672; Crouse v. Nixon, 70 Pac., 885; King v. Gilford, 70 S. W., 1064; Corne v. Dunbar, 71 S. W., 513; Ellis v. Whittaker, 64 Pac., 62; Parsons v. Titerock, 64 Pac., 1028; Knight v. Hirbour, 67 Pac., 1104; State v. Board, 21 So., 721; People v. Squire, 18 N. E., 362; State v. Napton, 25 Pac., 1045; In re Manning, 34 N. E., 931; 14 Ency. Pl. & Pr., 900; 19 Pl. & Pr. and note, 179; Dockinger v. Schultz, 52 N. W., 261; McIntire v. State, 139 Ill., 171; Radcliffe v. Patton, 37 W. Va., 197; The People v. Phillips, 67 N. Y., 582; Bryant v. Thompson, 128 N. Y., 426; In re Treadwell, 111 Cal., 189; Wedekind v. Bell, 69 Pac., 612; Hice v. Orr, 47 Pac., 424; State v. Meachem, 50 Pac., 52; People v. Com. Council, 82 N. Y., 575.)

*E. E. Enterline, W. E. Mullen* and *J. F. Hoop,* for plaintiffs in error, *contra.*

The Mayor and Clerk having refused and continuing to refuse to execute the bonds as required by the judgment, it is evident that the same controversy exists between the parties as upon the trial. The plaintiffs in error were permitted to and did give a supersedeas bond conditioned as required by law, and the operation of the judgment is still suspended by reason of the supersedeas bond and by noncompliance of the plaintiffs in error with the judgment of the District Court. The Town Council could not by the passage of the resolution subsequent to the judgment, authorizing the issue of the bonds, take away the right of these plaintiffs in error to seek a review of the judgment. But the resolution upon which the defendants in error rely for a dismissal of these proceedings was defective for not providing the method of calling in the outstanding bonds, which were to be refunded by the issuance of the bonds in question; and there is now no ordinance or law under which

the outstanding bonds can be legally called in or redeemed. That can only be done through an ordinance providing therefor. (R. S. 1899, Sec. 2783; Sauer v. Gillette (Colo.), 78 Pac., 1068.)

The Legislature had never enacted any law requiring the Mayor to execute the certificate of legality upon municipal bonds. The only legislation under the provision of the constitution requiring such a certificate had reference to the duties of clerks of school districts and County Clerks, but did not refer to bonds of cities or towns. The town of Sheridan had no authority to legislate upon the subject and the Town Council could not by ordinance require the Mayor to sign such certificate; the constitution has vested that power in the Legislature, which could not be delegated to a municipality. Thus the relator was seeking to compel the Mayor to execute a certificate attesting the legality of the bonds when there was no law in existence requiring him to do so. As no bond would be valid under the constitutional provision requiring such certificate of legality to be endorsed thereon, unless there shall be such a certificate so indorsed, it would seem that there is no duty whatever imposed upon the Mayor to execute the bonds.

It is needless to urge that if the town had been made the only respondent, the court could have made no order which would have been binding upon the officers whose duty it would have been to sign the bonds. In our view, the only necessary parties in a suit of this kind would have been the Mayor, Clerk and Treasurer. The other respondents had nothing to do with the execution of the bonds, nor is there anything in the case which authorized their being joined as respondents. The cases which seem to hold that the writ of mandamus should be directed against the board in its corporate capacity, are not in point in the case at bar. This case involves not the duty of the town itself, but the duty of its officers in the execution of a financial obligation. As the Mayor and Council had determined that refunding bonds should be issued and a sale made, an or-

dinance was enacted, and the duty of executing the bonds then devolved upon the Mayor and Treasurer. The town as such had nothing further to do.

Mandamus is tried and determined in the same manner as other civil actions. And hence a judgment in mandamus stands on the same footing with the judgment of any other action in respect to appellate rights. (R. S. 1899, Sec. 4205; *In re* Epley (Okla.), 64 Pac., 18.)

An action of mandamus will abate where the term of office of the officers against whom the writ is directed expires before the duty is performed. (State v. Board (Mont.), 79 Pac., 402.) And the term of office of the Mayor and Clerk in the case at bar may expire before the bonds can be executed, and will expire unless they are reelected at an election soon to occur. It would seem, therefore, that this court may be compelled to reverse the decision of the lower court and direct the dismissal of the action if the individuals now serving as Mayor and Clerk shall be succeeded by other persons. The Mayor and Clerk have an appealable interest in the case. (People v. Guggenheimer, 61 N. Y. Supp., 961; Chalk v. White (Wash.), 29 Pac., 979.)

If the contract in the case at bar upon which the right of relators is based is illegal, then the Mayor and Clerk should not be required to sign the bonds in pursuance of said contract. The Mayor under our statutes relating to the refunding of bonds has a co-ordinate power with the Council, and he cannot, therefore, be controlled by mandamus unless he assents to the issuance of the bonds. It follows, therefore, that a writ directed against the town would not bind the Mayor, and the Town Council could not by its own act require the Mayor to assent to the issuance of the bonds. (R. S. 1899, Secs. 1442, 1719, 1724; 1 Smith Mun. Corp., Sec. 290; 1 Dillon Mun. Corp. (4th Ed.), Sec. 273; Saxton v. Beach, 50 Mo., 448; Saxton v. St. Joc, 60 Mo., 153.)

POTTER, CHIEF JUSTICE.

This was a suit in mandamus brought in the District Court in the name of the State on the relation of the First National Bank of Chicago to compel the issuance and delivery to the relator of the refunding water bonds of the town of Sheridan to the amount of seventy-five thousand dollars, of the denomination of five hundred dollars each, bearing interest at five per cent per annum, and payable in thirty years after their date, but redeemable at the option of the town in ten years, in accordance with an ordinance of said town enacted June 15, 1903, providing for the issuance of such bonds for the purpose of redeeming and refunding the same amount of outstanding water bonds issued in 1893, which outstanding bonds became redeemable according to their terms on August 1, 1903. The relator claimed a right to the relief sought by virtue of an alleged contract between it and the corporate authorities of the town made June 18, 1904, as the result of a proposal of the relator, at the solicitation of the town authorities, to purchase the bonds at par, and an acceptance of such proposal.

The Town of Sheridan, Alfred Diefenderfer as Mayor, J. F. Hoop as Clerk, G. T. Stahl as Treasurer, and the individual members of the Board of Trustees or Council of the town, were joined as defendants, and an alternative writ was issued returnable September 3, 1904, the suit having been commenced August 9, 1904. The answer contained a general denial of the allegations of the petition respecting the contract relied on by the relator and the duties of the respective town officers to issue and deliver said bonds, or cause the same to be issued and delivered, to the relator, and also set up certain separate and specific defenses which may be summarized as follows: (1) The absence of any provision by ordinance or statute prescribing the manner of giving notice for the redemption of the outstanding bonds, and the failure of the Town Treasurer to ascertain and advise the corporate board as to the bonds,

their amount, etc., ready for retirement. Under this de-
fense the claim seems to have been that until such provision
and ascertainment had been made the Council or Board of
Trustees, as the corporate board, is indifferently designated
in the statute, was not in a position to issue the bonds or
accept a bid therefor. (2) The submission of a more favor-
able bid by another party (Shepard & Co.) on August 1,
1904, after the alleged acceptance of relator's bid. (3)
After the alleged acceptance of relator's bid, the passage
of a supplemental ordinance, viz: on August 1, 1904, re-
quiring an advertisement for bids to be submitted and
opened on September 5, 1904. (4) The submission of a
bid by another party (Shepard & Co.) on September 5, 1904,
agreeing to pay a slightly larger sum for the bonds than
that called for by relator's bid, and the alleged acceptance
thereof by the Town Council. In this connection, however,
it appeared that such acceptance was conditional only, hav-
ing been expressly made conditional upon the decision of
the court in this suit being in favor of the town, and if
unfavorable, then such acceptance, it was declared, should
be null and void.

Upon a trial of the cause the District Court found for
the plaintiff, and found specifically among other things
that in 1893 the town had duly issued its water bonds to the
amount of seventy-five thousand dollars, bearing interest
at six per cent, which were outstanding and unpaid and
redeemable; that an ordinance had been duly and regularly
enacted June 15, 1903, for refunding said indebtedness by
issuing bonds in the same amount to bear interest at five
per cent per annum, to run in denominations of five hun-
dred dollars each, and to be payable in thirty years, but to
be redeemable in ten years at the option of the town; that
the corporate authorities had duly offered the said refund-
ing bonds for sale according to the terms of said ordinance
to the highest bidder for cash; that on July 18, 1904, the
relator had bid par for the bonds and was the highest bid-
der up to that time, there having been several bids thereto-

fore received; and that on said date the bid of relator was duly and fully accepted by the corporate authorities of the town. Thereupon a peremptory writ of mandamus was awarded the plaintiff, requiring the defendants, the town and its officers aforesaid to make and cause to be signed, executed, sealed, registered and delivered to the relator such refunding bonds, the same to be dated not later than January 1, 1905, upon payment by the relator into the town treasury of the sum of seventy-five thousand dollars, and each officer was thereby required to perform his particular duty in respect to the issuance of the bonds as provided by ordinance.

The judgment was rendered November 15, 1904, and on December 29, 1904, this proceeding in error to review such judgment was instituted in this court by Alfred Diefenderfer as Mayor of the town, J. F. Hoop as Clerk, and D. Kahn as Councilman and member of the Board of Trustees. The Town of Sheridan, by its corporate name, the other members of the Board of Trustees, and the Treasurer were joined as defendants in error with the plaintiff below.

The principal defendant in error, the State on relation of the bank, filed a motion to dismiss the petition in error upon the following grounds: (1) That there is no longer any controversy pending in the cause; (2) that since the judgment the authorities of the town have directed the issuance of the bonds to the relator, and have fully complied with the judgment; (3) that neither of the plaintiffs in error have any appealable interest in the cause. The hearing was had upon that motion.

The motion to dismiss is based generally upon facts occurring since the rendition of judgment, shown by an affidavit of the Town Treasurer attached to the motion, containing duly certified copies of certain resolutions adopted by the corporate board on November 21, and December 19, 1904, showing thereby that the Council or Board of Trustees on November 21, 1904, not desiring to appeal, but

being willing to abide the judgment, adopted a resolution recognizing the contract with relator for the sale of the bonds in question, and directing their issuance, execution, sale and delivery to relator, in accordance with such contract and the judgment aforesaid, and requiring them to be dated January 1, 1905. That resolution also prescribed a form for the bonds and coupons to be attached, provided specifically for a notice to be given by the treasurer for the redemption of the outstanding bonds, and that interest should cease thereon on January 1, 1905, and required the Mayor to sign the new bonds and a certificate thereon to be endorsed attesting the legality of their issue, the clerk and treasurer to countersign the bonds, and the clerk to affix the corporate seal thereto. It is shown by the affidavit that notices were at once published by the treasurer calling upon the holders of the outstanding bonds to surrender them for payment and cancellation on January 1, 1905, at the Chemical National Bank, New York City; that by direction of the said treasurer, the relator on or before that date deposited the purchase price of the bonds, $75,000, at said Chemical National Bank to the credit of the town of Sheridan, and the treasurer on said date deposited in said bank a sufficient sum of money to pay all the interest on the outstanding bonds then due and unpaid; and that many of the outstanding bonds have been paid out of such deposits by said bank upon the direction of the treasurer. It is also shown that on December 19, 1904, the resolution of November 21 was again passed over, and, notwithstanding the veto of the Mayor, each of the five members of the board voting for the resolution on both dates, except D. Kahn, who voted in the negative. It is stated in the affidavit that the relator prepared and sent the bonds to the town of Sheridan in December, 1904, to be signed and executed, but that the Mayor and Clerk have refused to perform their duty in the premises, and that their terms of office will expire on or before March 24, 1905.

The statute authorizes the Mayor and Council of an incorporated city or town to issue its negotiable coupon bonds,

upon providing by ordinance therefor, for the purpose of redeeming, funding or refunding any indebtedness, bonded or otherwise, when the same can be done at a lower rate of interest, or to the profit and benefit of such city or town. (R. S. 1899, Secs. 1719-1724.) The town of Sheridan is incorporated under a special charter, enacted when Wyoming was a territory and had power to so incorporate cities and towns. (Sess. Laws 1884, Ch. 85; R. S. 1899, Secs. 1426-1487.) The bonds that were to be refunded by the issue in question had been issued in 1893 to provide funds for constructing, purchasing and regulating a system of water works for the town. Debts contracted for supplying a city or town with water are excepted from the constitutional limitation upon public indebtedness. (Const., Art. XVI, Sec. 5.)

The answer in the case below admitted that the bonds of 1893 had been duly issued, and also admitted the passage of the ordinance of June 15, 1903, for the redemption of such bonds by issuing refunding bonds, as the same was set out in full in the petition. It will be unnecessary to recite in detail the provisions of that ordinance, except that they may become material in some particulars in discussing one of the propositions in the case. It is sufficient now to say that it authorized and directed the issuance of the refunding bonds to the amount of seventy-five thousand dollars, without fixing their date of issue, provided that the rate of interest should be five (5) per cent, payable semi-annually, on January 1 and July 1 of each year, and that they should be issued in denominations of five hundred dollars each. The duties of the officers were prescribed in respect to the issuing of the bonds, and in some respects as to the calling in of the old bonds, but the precise method of giving notice thereof was not provided by that ordinance.

The ordinance recited the purpose of the issuance of the refunding bonds, and the desire of the corporate authorities to refund the water bonded indebtedness at a lower rate of interest.

It appeared on the trial that the corporate officers had solicited bids without advertisement for the refunding bonds, as they were permitted to do, since there was no requirement by statute that bids should be advertised for; and when relator's bid was submitted, and its alleged acceptance occurred, the town had not provided by ordinance for advertising for bids. It was shown that relator's bid was the best that had been received at that time. It was a bid to pay par for the bonds, the town to pay $250 to cover all expenses. At a meeting of the Mayor and Council the bid was acceped on July 18, 1904, and the relator notified thereof.

The chief contention of the respondents on the trial below, as might be indicated by the answer, was that no binding or valid contract had been made with relator, and that the town was, therefore, authorized to provide for receiving, and to receive and accept another and later bid, which was more favorable to the town from a financial standpoint. That was the chief issue in the case, the others supplementing it. The question arises, therefore, upon the motion to dismiss whether, in view of the action of the Town Council subsequent to the judgment, the issues have been withdrawn from further controversy, so that the appeal presents nothing but purely abstract questions. That is the contention of defendant in error. Counsel for plaintiffs in error, on the other hand, while apparently conceding that if no further controversy existed a dismissal might properly result, contend that the effect of the corporate action aforesaid has not been a settlement of the controversy or a full compliance with the judgment. The grounds of such contention will appear as we proceed.

Clearly there would be no further controversy to authorize a review of the judgment, had the issuance of the bonds not only been directed by the Council, but had they been signed, issued and delivered to the relator. (Leet v. Board (Cal.), 47 Pac., 595.) The right to mandamus to compel the issuance and delivery of valid municipal bonds to one

entitled thereto is upheld in a number of cases. (Jones v. Guttenburg (N. J.), 51 Atl., 274; Halsey v. Nowrey, Mayor (N. J.), 59 Atl., 449; Smalley v. Yates, 36 Kan., 519; People v. Brennan, 39 Barb., 522; People v. Mc-Guire, 65 N. Y. Supp., 463; High's Ex. Leg. Rem., Sec. 333.) In Jones v. Guttenburg, *supra,* the court say: "The claimants' right to these bonds is clear, and they are without any other adequate specific remedy. No specific remedy is provided by statute for the recovery of these bonds or damages for failing to issue them, nor does any exist in any common law action. The claimants could not bring an action of replevin, trover or detinue; and if an action as for a breach of contract could be maintained, it is difficult to see what would be the measure of damages, and if damages were recovered, the relators might be compelled to proceed by mandamus to compel the town to levy a tax to pay the judgment." We do not understand, however, that the right to the remedy of mandamus is disputed in case the relator is entitled to the bonds.

Assuming the legal right in the town at the time of the adoption of the November resolution to sell and issue the bonds to the relator upon its bid therefor, nothing would seem to have been left for the Mayor and Clerk to do but the performance of the mere ministerial duties of signing, sealing and delivering the bonds; every other matter having been settled and determined by the ordinance of June, 1903, and the resolution aforesaid. It is to be observed that none of the defenses interposed by the answer were personal to the town officers. They were each made a defendant, and each defended, in a representative capacity. The defenses set up were intended to show, and their only effect, if any, was that the town was under no obligation to the relator in the premises. None of the issues in the case went to the right of either of the plaintiffs in error to refuse a performance of the contract with the relator if a valid contract existed. In other words the officers offered no defense or justification for their refusal to act inde-

pendent of a defense or justification deemed available to
the town itself as a corporate body.   The action was against
the town, and against the other defendants as officers there-
of, on the theory that the latter were required to perform
their respective official duties in executing the obligation
imposed upon the corporation as a result of its contract.

We think it follows, therefore, that if the corporate board
had authority in November to recognize the contract, which
was declared by the judgment to be valid and binding upon
the town, and to reaffirm its acceptance of the relator's
bid, or to accept it as an original act, and in conformity
thereto to· sell the bonds to the relator, every issue deter-
mined by the judgment was by such action of the board
withdrawn from further controversy.

If there was anything in the proposition that the accept-
ance of relator's bid in July was premature because specific
provision had not been made as to the method of notifying
the holders of the outstanding bonds, which may be doubted,
that objection is cured by the resolution in November for
the sale of the bonds to relator which made such· provision.
Clearly, the mere fact that a better bid had been submitted
by another party on August 1st was of no avail to authorize
the town to ignore their previous acceptance of relator's
proposal.   That other bid, like the one submitted by the
relator, had not been submitted in response to an advertise-
ment for bids.

If the board had entered into a complete acceptance of
the bid of relator, on July 18, such action could not be in-
validated as against the relator by afterwards providing by
ordinance that bids should be advertised for, and thereby
soliciting other bids.   The action of the board in September
in receiving the bid of Shepard & Co. was taken pending the
suit and the alternative writ, and there was not an absolute
acceptance of such bid at any time; and the town doubtless
had the right to reject any bids submitted in response to its
advertisement, unless it had in some way waived that right.
Under the terms of the acceptance of the Shepard bid, it

became null and void if the decision in the pending suit should result unfavorably to the town. The decision of the District Court was not appealed from by the town of Sheridan, the principal defendant, and the party in whose interest every defense was interposed.

Did the corporate board of the town have the right to accept the judgment as a finality and proceed to comply with it so as to prevent its review on the petition of either of the three officers, the plaintiffs in error here? That we think is a practical statement of the question before us upon the motion to dismiss. If that right existed, it was exercised by the resolutions aforesaid. In our opinion the board had such right in the absence of any illegality in the bond issue or in the contract of sale.

But it is contended that, as the statute confers upon the "Mayor and Council" the power to issue the bonds of the municipality for the purposes mentioned, the Mayor has independent authority in the premises, and that bonds cannot be issued except with his consent. We cannot so construe the statute. It was evidently intended to bestow the power upon the governing body of the city or town, which consists of a Mayor and Council, having regard, however, to the usual prerogatives of the Mayor and Council. In Section 1724 it is provided that the issuance of the bonds shall be provided for by ordinance, which unquestionably means an ordinance enacted in the manner allowed by law. The Mayor is not given a vote upon questions coming before the board except a casting vote in case of a tie. He may veto an ordinance, but it may be passed over his veto by a two-thirds vote of the members of the board. If, therefore, there was no illegality in the contract for the sale of the bonds to relator, a sufficient number of the board could by appropriate procedure provide for such sale, notwithstanding the disapproval of the Mayor. They did so by adopting the resolution of November over his veto, assuming that he was authorized to express his disapproval thereof by a veto.

The clerk is given no voice in passing ordinances or resolutions, and he is clearly bound by a valid act of the board,

though he may disapprove it. The plaintiff in error, Kahn, had a right to vote upon the resolution, and did so, casting the only negative vote. He is likewise bound by the valid act of the majority. He has no further duty in the matter, not being required to sign or take any part in executing or delivering the bonds.

It appears to us, therefore, that if the bonds themselves would not be illegal, or were not to be issued for an illegal purpose, and if the sale to relator upon its bid is not illegal, there is no controversy now pending between the interested parties in the case. It would be useless to decide questions determined by the judgment that have ceased to be a matter of controversy. (People ex rel. v. Com. Council, 82 N. Y., 575; Campbell v. Hall (Wash.), 69 Pac., 12.)

It may be conceded that, should the board by its aforesaid resolutions be attempting to illegally issue the bonds of the town, or to illegally sell the same to the relator, the Mayor and Clerk might be permitted to demand a review of the judgment, on the ground that they ought not to be compelled to perform an illegal act.

There is some contention of illegality in the transaction. There is, indeed, no assertion that the town was unauthorized to issue the refunding bonds in question. On the contrary, it was proposed to issue them to another party. It is, however, insisted that the relator failed to show that the requisite steps had been taken to make the bond issue of 1893 regular and legal. That was not an issue in the case. The petition alleged those bonds to have been duly issued, and to constitute a valid and existing indebtedness of the town. The answer expressly admitted their due issuance for the purposes stated in the petition; and upon the trial there does not seem to have been any suggestion to the contrary. Those bonds were referred to in the ordinances and resolutions of 1903 as constituting a valid bonded indebtedness of the town.

It is again insisted that the sale to relator is illegal on the ground that it will be for less than par and accrued interest,

in violation of the statute. Counsel discusses that contention altogether upon the bid of the relator. We think it is more properly to be considered upon the present motion with reference to the resolution of November which finally provided for the sale, together with the bid. But was the bid a proposal to pay less than par and accrued interest at time of disposal? It offered to pay "par," the town to pay $250 to cover all expenses.

At the time the bid was submitted the bonds had not been issued, nor their date fixed. No interest had accrued. Under the November resolution the bonds were to be dated January 1, 1905, and the outstanding bonds were to be redeemed on the same date. The relator deposited the agreed purchase price, $75,000, the principal of the bonds, as directed by the town treasurer, on or before the date of the bonds. Hence, under the resolution, and upon the facts, there was no accrued interest. But the word "par" would seem to include accrued interest, nothing to the contrary appearing. (21 Ency. L. (2d Ed.), 1029; Simonton on Munic. Bonds, 145; Illinois v. Delafield, 8 Paige, 537; Ft. Edward v. Fish, 156 N. Y., 363.)

It is argued that the condition for the payment by the town of two hundred and fifty dollars to cover all expense brought the purchase price below par. The expense referred to was no doubt the estimated cost of preparing the bonds ready for execution. It was apparently so treated on the trial, so far as the record discloses. No intimation is to be found anywhere in the case that any other matter of expense was contemplated. We are aware of no rule of law, nor do we understand the statute to declare or imply that the bond purchaser is to bear the expense incident to the preparation of the bonds, unless he agrees to do so. The bonds are to be issued by the town, and in the absence of a contrary arrangement it would clearly be its duty to cause them to be prepared, issued and delivered, and to defray the necessary attendant expense thereof.

There is not to be found the slightest intimation in the action of the corporate board, or in the record of an at-

tempted violation or evasion of the statutory requirement as to the terms and conditions of sale.

The judgment having been acquiesced in by the corporate authorities of the town, who have proceeded as far as possible to comply with it, and are only prevented from completely doing so by the refusal of the Mayor and Clerk to perform mere ministerial valid duties, no good reason is perceived for permitting a review of the judgment at the suit of those officers. The subsequent action of the corporate authorities operated, in our judgment, to withdraw from further contest every controverted issue upon the trial determined by the judgment. Nothing had previously been done which prevented the corporate board from proceeding in November to fully accept relator's bid, and provide for the sale of the bonds to the relator upon that bid, such bid having been solicited and submitted when a right to do so existed, and in accordance with an existing ordinance. The only issue, if any, therefore, that can now exist between the parties is whether the Mayor and Clerk may rightfully refuse a performance of the duties imposed upon them by the resolution adopted by the corporate board since the rendition of judgment. That was not an issue determined by the judgment.

The fact that the plaintiffs in error were permitted by the court below to give and did give a supersedeas bond does not have the effect apparently insisted upon to authorize a review of the judgment for the determination of controversies fully settled by the act of the parties since the judgment. The giving of the bond might prevent the judicial enforcement of the judgment, pending the appeal, by attachment for contempt or otherwise, but did not prevent the parties from voluntarily executing or complying with the judgment.

Neither would the possible fact that the terms of office of the plaintiffs in error, Mayor and Clerk, have expired since the taking of the appeal furnish a sufficient reason for a reversal of the judgment.

The constitution provides that "no bond or evidence of
debt of any county, or bond of any township or other polit-
ical subdivision, shall be ·valid unless the same shall have
endorsed thereon a certificate signed by the County Audi-
tor or other officer authorized by law to sign such cer-
tificate, stating that the bond or evidence of debt is issued
pursuant to law and is within the debt limit." (Const.,
Art. XVI, Sec. 8.)   The ordinance of June, 1903, and the
resolution of November, 1904, required such certificate to
be signed by the Mayor.   It is suggested that the Legisla-
ture had failed to enact a law designating what officer should
sign such certificate upon bonds of a city or town until the
recent session of the Legislature, when an act was passed,
approved February 21, 1905, requiring the certificate of
legality upon such bonds to be signed by the clerk.   It is
argued that, in view of the recent statute, it is no longer the
duty of the Mayor to sign the certificate as required by the
ordinance, resolution and judgment.   When the ordinance
and resolution were adopted the Town Council was no
·doubt authorized to designate the officer to sign the cer-
tificate, and we know of no reason why the Council might
not have required the Mayor to sign in addition to the
signature of any other officer required by statute.   The
bonds are to be dated January 1, 1905, the purchase price
was then paid, and had they been executed on that date
the new statute would not have applied.   It may perhaps
now apply, should there be a new Mayor and Clerk in
office, but the provision of the ordinance would not, in our
opinion, be necessarily void; its effect may be to require
the Mayor, as well as the Clerk, to certify to the legality
of the bonds.

For the reasons stated, we think the motion to dismiss
should be granted.   The petition in error will be dismissed.

BEARD, J., concurs.