### GOOLSBY *et al.* v. BOARD OF DRAINAGE COMMIS-SIONERS OF CEDAR CREEK DRAINAGE DIS-TRICT *et al.*

1. The act of the legislature approved August 19, 1911 (Acts 1911, p. 108), authorizing the creation of drainage districts, etc., is not in violation of art. 1, sec. 3, par. 1, of the constitution of the State of Georgia, which provides that "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid;" or of the fifth amendment of the constitution of the United States, which provides that "Private property shall not be taken for public use without just compensation." The act of 1911 does not undertake, nor is the effect of it, to confiscate the property of the citizen, nor to take it for public purposes.

(*a*) The fifth amendment to the constitution of the United States refers to powers exercised by the government of the United States, and not to those of the individual states. *Johnson* v. *State,* 152 *Ga.* 271, 273 (109 S. E. 662), and authorities cited.

2. The act of 1911, supra, is not in violation of art. 7, sec. 6, par. 2, of the constitution of the State of Georgia, which provides that "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose except for educational purposes, to build and repair the public buildings and bridges, to maintain and support prisoners, to pay jurors, . . and for litigation, quarantine, roads, and expenses of courts, to support paupers, and pay debts heretofore existing, to pay the county police, and to provide for necessary sanitation." The assessment provided for by the act of 1911 is not a tax levied by a county, and is not such a tax as contemplated by the above constitutional provision. *Almand* v. *Pate,* 143 *Ga.* 711, 716 (85 S. E. 909); *Witherow* v. *Board of Drainage Comm'rs,* 155 *Ga.* 476 (117 S. E. 329).

3. Neither is the act of 1911 in contravention of art. 1, sec. 1, par. 23, of the constitution of the State of Georgia, which provides that "The legis-

lative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the other, except as herein provided," on the ground that the act undertakes to create a court and authorizes it to "exercise a purely judicial function and at the same time a purely executive function."

4. Nor is the act of 1911 in violation of art. 4, sec. 2, par. 2, of the constitution of Georgia, which provides that "The exercise of the police power of the State shall never be abridged, nor so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well-being of the State." It is within the police power of the State to enact such a law as that contained in the act of 1911, supra, where it is necessary to the public welfare. *Almand* v. *Pate*, supra.

5. The act of 1911 is not in violation of art. 6, sec. 18, par. 1, of the constitution of Georgia, which provides that "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate, but the General Assembly may prescribe any number, not less than five, to constitute a trial or traverse jury in courts other than the superior and city courts." See, in this connection, *Smith* v. *Duggan*, 153 *Ga.* 463 (2) (112 S. E. 458). The act of 1911 provides for an appeal to the superior court. An appeal is a de novo investigation, and in the superior court the appellant would not be deprived of the right of a trial by a jury if questions of fact are involved. Civil Code (1910), § 5014. All appeals to the superior court shall be tried by a jury at the first term after the appeal has been entered, unless good cause be shown for continuance. Civil Code (1910), § 5017.

6. A court of equity will entertain jurisdiction over matters where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law. Civil Code (1910), § 4586; *Blaisdell* v. *Bohr*, 68 *Ga.* 56; *East Atlanta Land Co.* v. *Mower*, 138 *Ga.* 380 (3) (75 S. E. 418); *McLaren* v. *Steapp*, 1 *Ga.* 376.

(a) A claim is not an available remedy to test the validity of an execution, except where property is claimed by a third person not a party to such execution. Civil Code (1910), § 5157.

(b) Neither is an affidavit of illegality a proper remedy to contest the illegality of an execution in the nature of a tax execution. See *Webb* v. *Newsom*, 138 *Ga.* 342, 345 (middle of page) (75 S. E. 106).

7. Under the act of 1918 (Acts 1918, p. 147, sec. 2), amending the drainage act of 1911, supra, and providing for the establishment of levee or drainage districts for the purpose of enlarging or changing any natural watercourses, and for digging ditches or canals, for securing better drainage, etc., the tax-collector of the county may issue his execution to enforce the collection of all unpaid assessments due by the landowners, which shall proceed as ordinary executions for State and county taxes.

(a) The act of 1918 directs that executions issued by the tax-collector against the landowner shall be levied by any sheriff or constable in the county in which the land is located. Acts 1918, p. 151. A levy made and advertised by such sheriff is not illegal and void for the reason that

the execution is directed " to any lawful officer to execute and return." *Byars* v. *Curry*, 75 *Ga.* 515.

8. Where the sheriff of a county levies an execution issued under the drainage laws of this State, giving the specific number of acres of land, more or less, " and being that specific bottom land · on Cedar Creek, Jasper County, Georgia, belonging to [named defendants], contained within what is known as the Cedar Creek drainage district as shown by a map or survey of said Cedar Creek drainage district of said County of Jasper on file in the clerk's office of Jasper superior court," and reciting that the property levied on is the property of the defendant in fi. fa., and it appears that such a map is of file in the clerk's office of the superior court of the county, such levy is not void for uncertainty in the description of the land. *Conley* v. *Redwine*, 109 *Ga.* 640 (11) (35 S. E. 92, 77 Am. St. R. 398); *Wiggins* v. *Gillette*, 93 *Ga.* 20 (2) (19 S. E. 86, 44 Am. St. R. 123).

9. Where one is made a party to a proceeding under the drainage laws of this State, in order to create a drainage district and to create drainage commissioners and make assessments against the landowners of the property to be drained, and such party fails and refuses to appear and object to the creation of the drainage district and appointment of drainage commissioners, who subsequently make assessments against the landowners for improvements made on the land, or, having objected, fails to prosecute the case on objections filed, which are dismissed, or, after the assessment, fails to avail himself of the right of appeal as provided in the drainage act of 1911, such landowner will not be heard to set up any defense which he had when and before the assessment was made.

10. Where bonds issued for the purpose of improving lands under the drainage laws of this State were duly validated, landowners whose property was to be improved by the proceeds of the bonds, who had notice of the validation proceedings, who failed to intervene in those proceedings, and who bring a petition to enjoin the collection of an assessment to pay the principal and interest due, will be estopped from attacking the validity of the legislative act under which the bonds were issued, on the ground that the act is unconstitutional. Acts 1913, p. 85; 1 Park's Ann. Code, § 439 (qq); Civil Code (1910), § 448; *Whidden* v. *Fletcher*, 150 *Ga.* 39 (102 S. E. 350); *Dumas* v. *Rigdon*, 151 *Ga.* 267 (106 S. E. 261).

11. " After the judgment establishing a drainage district has been rendered, it is too late for the plaintiff to show that his lands therein embraced have not been benefited by the improvement." *Board of Drainage Comm'rs* v. *Brown*, 155 *Ga.* 419 (5) (117 S. E. 236).

12. It is no cause, on the part of a landowner whose property has been improved under the drainage act of 1911, to enjoin the enforcement of executions against the land as his property, that he parted with title to the land after the assessment made against such land was made. Especially is this true where the vendee of the landowner is made a party to the assessment proceedings.

13. Under the act of 1911 (Acts 1911, p. 131, sec. 36), the compensation of engineers and others, and all other fees and costs incurred under the

provisions of the act, shall be the same as provided by law for like services in other cases, the costs and expenses to be paid, by the order of the court, out of the drainage fund provided for that purpose, and the board of drainage commissioners shall issue warrants therefor against funds which shall be in the hands of the treasurer. If more has been paid to the officers than they were entitled to under the terms of the act, then it can be recovered in a proper proceeding for that purpose by the board of drainage commissioners; and if they refuse to perform their duty, they can be compelled to do so; but the petitioners were not authorized to proceed in this action to have such sums restored.

14. Other assignments of error not specifically dealt with are without merit.

Nos. 3484, 3505. SEPTEMBER 6, 1923.

Equitable petitions. Before Judge Park. Jasper superior court. October 10, November 20, 1923.

*W. S. Florence, Allen & Pottle, C. L. Bartlett,* and *Strozier & Deaver,* for plaintiffs.

*A. S. Thurman* and *Greene F. Johnson,* for defendants.

HILL, J. M. C. Goolsby and others brought petitions against the Board of Drainage Commissioners of Cedar Creek Drainage District et al., to enjoin the collection of certain assessments for the interest due on certain bonds which had been issued and validated for said district; and for other relief. The executions had been issued against certain described real estate as the property of the plaintiffs, for the collection of the amounts named therein. The defendants filed demurrers. The court sustained them and dismissed the petitions. To this judgment the plaintiffs excepted, and brought the cases to the Supreme Court for review. They involve the same controlling questions, and have been considered together.

The plaintiffs alleged substantially as follows: The fi. fas. issued against them are for double the value of the land to be improved by the drainage, and amount to a confiscation of their property, in violation of the fourteenth amendment to the constitution of the United States and of the constitution of Georgia. The assessments for the expenses of draining the property exceed the benefit to the land. The fi. fas. are directed " to any lawful officer to execute and return," instead of " to all and singular the sheriffs and constables of this State." They are null and void, because no power existed under the law for the tax-collector to issue them. The identification and description of each lot levied on is so vague, indefinite, and uncertain as to be null and void, because the

map and survey of the drainage district on file in the clerk's office of Jasper superior court is one continuous survey, and does not designate or point out the specific bottom as set out in the map and survey and described in the levy and advertisement; and be-. cause there is no demarkation, stob, or line to indicate on the ground showing where the bottoms are located, etc. The drain-. age commissioners have been negligent in maintaining the ditch dug through the bottom lands, to the injury of plaintiffs. Fraud is alleged in the organization of the drainage district, and misrepresentations as to the cost per acre for draining the land. The drainage commissioners and their confederates hold a majority of the bonds, and are not innocent purchasers. Goolsby alleges that his land was valuable for pasturage, but that the drainage ditch has caused his lands to overflow and become filled with sand and silt and useless for cultivation, and he has been damaged in the sum of $2235, for which he prays judgment in behalf of the Federal Land Bank of Columbia, South Carolina, which has a deed to secure a debt on the land embraced in the levy, and specified therein to contain 41.10 acres, for a debt in the sum of $5000, and in the deed he is bound to warrant and defend the title to the land to the bank; therefore he alleges that the fi. fa., is proceeding illegally against him, because he has no leviable interest in and to the land levied on. The drainage commissioners have drawn $300 in salaries, and have paid to a farm demonstration agent $700 out of the drainage fund. The clerk of the superior court received $870 as salary as clerk of the board of drainage commissioners; the further sum of $812 is alleged to have been drawn and used illegally for the purpose of buying for the board of drainage commissioners the lands advertised, and that he had no right or authority to draw said funds from the treasury; and plaintiff prays for an order requiring the clerk to immediately refund the money to the treasurer of Jasper county and ex-officio treasurer of the drainage district, and that the funds may be available for the purposes intended by the statute for which the funds can be lawfully used. The treasurer has received $33,903.43, as shown by his receipts. Under the law the bonds should have been sold for $49,000 plus the interest to the date of sale, and it is prayed that the treasurer be required to account to the court for the deficit of $15,096.57, and to show why the amount is not in the treasury for

the purpose of disbursement as required by law. Numerous amounts were paid out contrary to law; and an audit is asked, and a judgment as to which amounts are legal and which are illegal, and a court order for a refunding. The drainage commissioners allowed J. S. Malone Jr. to purchase for himself and his brother, R. A. Malone, a member of the board, bonds to the amount of $14,000, with an allowance of ten per cent. commissions for selling them, plus accrued interest, by paying the sum of $3,000 cash and giving notes for the balance and agreeing to pay current bills of the board after all other available cash has been exhausted. This and other similar transactions was a fraud against the landowners.

J. M. and M. G. Phillips, pleading for themselves, allege that the assessment levied upon their lands in the sum of $1741.91 is double the value of the land asserted to be within the drainage district; that they own the lands as tenants in common; that they signed the landowner's agreement allowing the lands to be taken for drainage purposes, on the express agreement that from $20 to $30 per acre would be the extreme cost of the project per acre; that the bottoms alleged to exist do not exist in the number of acres as set out in the survey, as the survey took in a considerable amount of upland and a considerable amount of branch bottoms which are not affected in any manner by the drainage, and plaintiffs do not know and could not guess the location of the lands except from the plat of the surveyor under the employment of the commissioners of the district, and it would be inequitable and injurious to allow him to locate lands after the sale, as he is a confederate of the commissioners; that the plaintiffs have been damaged by the improper maintenance of the ditch in the sum of $870.50, for which judgment is prayed; that the promulgators of the ditch and drain assured the landowners that the officers would receive no salaries; that the construction is not feasible or practicable, and further expenditures will be money thrown away; and they ask an equitable adjustment "annulling the unfortunate venture."

C. H. Greer alleges, that he did not sign the landowners' agreement allowing his land to be traversed by the ditch; that he does not own the 39.22 acres as set out in the levy; that he only owns 14.20 acres of the land which was confiscated by the board of drainage commissioners, and the ditch was run through his land with-

out warrant or authority, or condemnation as the law requires; that he personally is damaged in the sum of $75 by the confiscation of his property, for which he asks judgment against the board of drainage commissioners; that 25.02 acres of land contained in the levy is set out on the assessment roll as being the property of Greer and Fullerton as tenants in common; that the lands were not condemned; that Fullerton, according to the knowledge and belief of plaintiff, did not sign the landowners' agreement, and plaintiff knows that he personally did not sign the agreement, and that the land was confiscated by the board of drainage commissioners without authority of law; that the lands belonging to Greer and Fullerton and taken for ditch purposes were of the value of $75, for which plaintiff asks judgment against the board of drainage commissioners, to be paid out of the funds provided by law; that neither plaintiff nor Fullerton was made a party to the proceedings relative to the land indicated in the levy of 25.02 acres. He prays that they be relieved from the assessment placed upon them in the assessment roll, and that he be relieved from the assessment on the 14.20 acres said to be his land, as set out in the advertisement and levy.

Mrs. J. R. Ezell alleges that she never signed the landowners' agreement, and her land was confiscated without condemnation proceedings; that she filed objections to the construction of the ditch, and her objections were dismissed by the commissioners; that her land was productive prior to the construction of the ditch, and it is now worthless; and she prays that the assessment against her and her property be declared null and void. By reason of the digging of the ditch her lands have been washed and covered with sand and water so as to make them too wet for cultivation, and she has been damaged in the sum of $2,000, the value of the land, for which she prays judgment. On May 9, 1921, plaintiff executed and delivered to the First National Bank of Monticello a security deed to secure a debt in the sum of $6,000, and the deed contains all of the 71.56 acres of land embraced in the levy and advertisement, and on the day when the fi. fa. was levied on the 71.56 acres of land she had no leviable interest in it, but she agreed in the deed to warrant and defend the right and title in the land to the First National Bank of Monticello; and under the warranty she prays the recovery of damages for the taking, and that the

land embraced in the deed be found in her favor for the use of the bank. She also prays that the First National Bank of Monticello be vouched into court and be made a party defendant hereto, for the purpose of protecting the lands from the cloud which the levy will throw upon the title of the bank as set out in the deed.

It is further alleged that there is a multiplicity of actions at law that would grow out of this litigation; and that there are certain rights and equities which are applicable to the facts according to the pleadings, which rights could not be properly adjudicated in a common-law action. Plaintiffs pray that W. F. Parsons, sheriff of Jasper County, be enjoined from selling the properties of each individual as described in the pleadings; that he be required to allow all things pertaining to this suit to remain in statu quo until the further order of the court; that the board of drainage commissioners be required to answer each and every allegation of this petition, and be enjoined from collecting the assessments until the issues made by this petition can be passed upon by the court or jury, as the case may be; that T. G. Pound, clerk of the board of drainage commissioners, be required to answer each and every allegation, and to turn over to J. R. Davidson the $812.87 received by him on March 8, 1922, from the treasurer of the drainage board in his official capacity as treasurer; that W. S. Womack be required to answer relatively to his procedure in handling the funds created for the purposes specified in the drainage laws of Georgia; that J. D. Lane Sr., tax-collector of Jasper County, be restrained from further proceeding with the fi. fas. until further order of the court; that J. R. Davidson, treasurer of Jasper County, and ex-officio treasurer of the board of drainage commissioners, be required to certify to the court the status of the funds which have come into his hands and which have been disbursed by him, and that he be required to take such action as is necessary for the recovery of any funds which may be decreed under this petition to have been illegally paid out by him.

Plaintiffs amended their petition by alleging that the act of the General Assembly of Georgia, approved August 19, 1911 (Acts 1911, p. 108), is in contravention of art. 1, sec. 3, par. 1, of the constitution of the State (quoted in headnote 1), because under that act their property has to all intents and purposes been confiscated, and the assessment levied by the drainage commissioners

is for an amount exceeding in value the entire value of the property affected by the canal or drain. Also, that the act is in violation of art. 7, sec. 6, par. 2, of the constitution (quoted in headnote 2), because the act has no reference whatever to the matter of public health or sanitation, but is manifestly and palpably a plan to drain uncultivable lands and make them fit for cultivation and more productive: and it is not within the power of the General Assembly to make any assessment upon the property of the citizens, by way of taxes or otherwise, except for the purposes expressly and distinctly provided for by the constitutional provision just referred to. Also, that the act is in contravention of art. 1, sec. 1, par. 23, of the constitution (quoted in headnote 3), because the act on its face undertakes to *create a court* composed of certain persons in the act described, and authorizes and empowers the court to exercise a purely judicial function and at the same time a purely executive function, in that it authorizes said court to pass judicially upon the questions in the act provided for, and at the same time authorizes and directs the court to execute its final judgment. Also, that the act is in violation of art. 4, sec. 2, par. 2, of the constitution (quoted in headnote 4), because certain persons named in the act are created a body corporate with the right to sue and be sued, and the provisions of the act authorize the corporation to conduct its business in such a manner as to infringe the equal rights of plaintiffs. Also, that the act is in violation of the fifth amendment of the constitution of the United States (quoted in headnote 1), as under the provisions of the act the plaintiffs' property was to all intents and purposes confiscated; its market value is less than the amount of the assessment; and if the so-called executions are permitted to proceed, it will amount in substance to taking the property of petitioners without any compensation whatever. Also, that under the act, there is no provision whatever for a trial by a jury before the court created by the act, and therefore the act contravenes the constitutional section quoted in headnote 5.

It is further alleged, by way of amendment, that none of the lands described, which have been levied on and advertised for sale as the property of the plaintiffs, have been assessed by the board of drainage commissioners of Cedar Creek drainage district as provided by the act of the General Assembly, supra; and there-

fore that the levies and advertisement in pursuance thereof are null and void, for the following reasons: (1) That the lands are not and have not been surveyed or platted as required by said act. (2) That the board of drainage commissioners have arbitrarily, without plat or survey, declared a certain number of acres of land subject to the tax or claim, without any description by courses and distances or metes and bounds. (3) That while the property of each of plaintiffs is described, both in the advertisement and levies, as that specific bottom land on Cedar Creek belonging to each of plaintiffs, contained within what is known as Cedar Creek drainage district, as shown by map and survey of that district of the County of Jasper, on file in the clerk's office of Jasper superior court, in fact the map or survey contains no description whatsoever of said parcels of land. (4) That neither from the description contained in the levies and advertisement, nor in the plat and survey, is it possible for a prospective purchaser of said property to ascertain what specific property is levied on, advertised for sale, or assessed. (5) That the act of the legislature expressly provides, as a mandatory condition precedent to the assessment or levy of the property, that the boundary of the lands assessed and levied upon shall be shown upon the map and survey; and no boundary or description of the land is given in the map and survey. (6) That the locations, boundaries, and quantity of each of petitioner's tracts of land levied on and advertised for sale are purely guesswork, so that no prospective purchaser could know with any degree of certainty what he is buying or paying for.

The petition was further amended by adding as a plaintiff the Federal Land Bank of Columbia, South Carolina, a corporation under the laws of the United States; and by alleging that at the *time of the levy* on the land of plaintiff M. C. Goolsby, described in the petition, the title thereto in fee simple was, and still is, in said Federal Land Bank for the purpose of securing a debt. Also, by striking all prayers for damages against the defendants.

The grounds of demurrer are as follows: (1) The petition is insufficient in law, and the facts set out therein constitute no cause of action; and so far as petitioners seek to recover for illegal expenditures, or have them recovered, there is no right of action to recover or have them recovered in plaintiffs. (2) The facts set out in the petition do not authorize the granting of the equitable re-

lief prayed for in the petition; and there is nothing in the petition authorizing or justifying or requiring the interposition of a court of equity in the premises. (3) It appears affirmatively from the allegations that the petition is multifarious and bad for misjoinder, in that it appears that petitioners in one and the same suit allege or attempt to allege distinct and separate claims or causes of action of different persons against these different defendants, seeking separate and distinct relief against them; and no reason appears either in law or in equity why each of the plaintiffs can not and should not maintain a separate and distinct suit to redress the grievances complained of. (4) As to any and all claims for damages asserted in said petition on behalf of the different parties and individuals named, the petition is multifarious and bad for misjoinder, in that it seeks in one and the same suit to allege and have the court take cognizance of distinct and separate claims of different persons; and it appears affirmatively from the allegations that if any damage be suffered at all, or if the plaintiffs be entitled to recover any damages at all, the damage as well as the interest is severable, and therefore each party injured, if injured at all, must sue separately, and no reason appears from the petition why these separate and distinct claims for damages or separate and distinct persons should be joined in one and the same suit. (5) The fifth ground of the demurrer is as to damages alleged by plaintiffs; but inasmuch as plaintiffs have dismissed that portion of their petition with reference to the claim for damages, this part of the demurrer is omitted.

Applying the rulings in the headnotes, to the facts of the cases, the court below did not err in refusing an injunction, and in sustaining the demurrer.

*Judgment affirmed. All the Justices concur.*