*A. J. Perryman* and *H. H. Revill,* for defendant.

---

# BOARD OF DRAINAGE COMMISSIONERS OF NEW RIVER DRAINAGE DISTRICT *et al. v.* ARNOLD *et al.*

1. Several landowners in a drainage district can join in an equitable petition to restrain the enforcement of void executions issued to collect assessments levied upon their lands in such district; and the existence of a remedy by affidavit of illegality in favor of each individual landowner would not defeat their remedy by injunction.

2. Drainage bonds can not be sold for less than par.

(a) The par value of an interest-bearing bond on the day of its, issuance is the principal thereof; and on any date thereafter such par value is the sum of the principal and the accrued interest.

(b) The allowance of commissions, directly or indirectly, to the purchaser of such bonds violates the provision of the drainage act prohibiting their sale at less than par.

(c) Under this statute a sale of these bonds, bearing 8 per cent. interest, in part for cash, and in part of a non-interest-bearing time certificate of deposit, payable in the future, amounts to a sale at less than par.

(d) The contract between the drainage commissioners and the purchaser of these bonds, if such there be, by which the latter is to pay to the former the par value thereof, is a legal and binding contract; and the purchaser will be liable to the drainage district for their par value, notwithstanding the contract between the drainage commissioners and a person, other than the purchaser, by which commissions for the sale of these bonds were to be paid nominally to such third person, but in fact were to go to the purchaser. The commission contract, being void, furnishes no defense to the contract for the purchase of the bonds at par.

3. The present proceeding by the plaintiffs having been taken after the sale and delivery of these bonds, with a large part of the purchase-money paid, and large sums expended on this drainage project with their knowledge, they are now estopped from seeking to enjoin present and future assessments on their lands to pay the principal and interest of

said securities, and payments to the contractor and others, under valid contracts for work and services rendered and to be rendered in connection with this improvement, the effect of such injunction being to stop the improvement, leave it in an unfinished condition, and render the work done of little value.

4. The executions issued against the plaintiffs being conceded to be void, the trial judge did not err in enjoining their enforcement; but did err in all other respects in granting a temporary injunction.

No. 3794. NOVEMBER 14, 1923.

Injunction.    Before Judge Roop.    Coweta superior court. April· 30, 1923.

J. H. Arnold and others filed their equitable petition against (1) the Board of Drainage Commissioners of New River Drainage District, (2) C. S. Colley, W. A. Bohannon, and W. A. Post, members of said board, (3) W. A. Nall, the board's attorney, (4) D. Conger, its superintendent of construction, (5) the sheriff of Coweta County and his deputy, (6) the tax collector of Coweta County, (7) the Bank of Grantville, (8) Thompson & Moseley, contractors, and (9) the Hanchett Bond Company of Chicago.    They made this case:    W. A. Nall, an attorney at law, and D. Conger, who were promoting the creation of said district, the former representing himself to be an expert in creating drainage districts under the drainage act of 1911, and the latter representing himself to be an experienced drainage engineer, represented to petitioners and other owners of land now embraced in said district that it was entirely feasible and practicable to drain the wet and overflowing lands therein at a cost not exceeding $20 per acre.    As a result of said representations, a petition for the establishment of said district was filed on Aug. 1, 1920.    Nall acted as attorney for the drainage commissioners, and Conger acted as drainage engineer in the establishment of the district.    The drainage commissioners made an assessment-roll, assessing lands of plaintiffs and other landowners in the district at a much higher figure.    The commissioners issued bonds amounting to $55,000, bearing 8 per cent. interest, payable semi-annually, and procured a judgment of Coweta superior court validating the same on June 14, 1922.    The bonds were dated July 1, 1922.    In the fall of 1922 the commissioners sold these bonds to the Hanchett Bond Company at ninety-one cents on the dollar, without reference to the interest that had accrued thereon from July 1, 1922, receiving only $10,000 at the time of the delivery of said bonds.    Since, they have received from

said company additional sums aggregating some $20,000. To disguise the fact that said bonds were not sold for par, the commissioners made a contract with the cashier of the bond company by which he was to be paid a commission of 9 per cent. for selling these bonds, which in fact was retained by the Hanchett Bond Company; and said transaction, stripped of subterfuge, simply meant that the commissioners agreed to sell the bonds to said company at not more than ninety-one cents on the dollar. If the commissioners had agreed in good faith to pay a commission to effect a sale of the bonds, such agreement would have been illegal, as under the law it was their duty to sell the bonds for not less than their full face value; and the commissioners did not receive the par or face value thereof. The sale of the bonds to the Hanchett Bond Company was null and void, and that company received no title to the bonds. That company had full knowledge that the drainage act of 1911 prohibited the sale of the bonds at less than their par value. In said sale the commissioners acted under the advice of Nall. Nall and Conger were the moving spirits in all the proceedings in the creation of the district and in the sale of the bonds, and have largely profited thereby, Nall having received $2000 from the commissioners for his services as their attorney, and is exacting $500 additional; and Conger has received $3000 for his services, and still receives $100 per month.

In the fall of 1922 the commissioners entered into a contract with Thompson & Moseley to dig the ditches and do other work in connection with said drainage project, according to alleged plans drawn by Conger, and under his supervision. Under this contract New River was to be straightened and ditched out a depth of not less than eight feet, Thompson & Moseley to receive 10-½ cents per cubic yard for dirt and about 14 cents for rock. All obstructions were to be removed and the banks and sides of the ditch were to be freed from stumps, rocks, or other obstructions. Acting on the representations of Nall and Conger and some of the commissioners that said project was feasible, and that their lands would be rendered dry and cultivatable, petitioners were lulled into security, but were awakened in the winter of 1922 and 1923, when they discovered the excessive assessments on the lands in the drainage district. J. H. Arnold had his lands surveyed by an expert engineer and found that the project, as regards his lands, was

not feasible or practicable, and that said ditch would wash sand and other matter on his lands instead of benefiting them, and also render wet and uncultivatable his lands adjoining his lands on New River. At the time of this discovery, the ditch had not been dug on his lands. He promptly notified the commissioners and the bond company that he objected to said ditch being dug through his lands, offering to pay his pro rata part for the digging of said ditch above his lands; but his objections were unheeded, and Thompson & Moseley proceeded with great haste to enter upon his lands and are now engaged in ditching thereon. Said work is not being done in accordance with plans and specifications. Instead of being dug straight, it is being dug crooked, and rocks, stumps, roots, and other obstructions are being left in and on the sides of said ditch. Conger still permits Thompson & Moseley to draw compensation, making no deduction for earth removed by nature where the ditch is sunk into the channel of the river. The commissioners claim they are powerless to correct this fraud, that the same rests with Conger. Nall and Conger confederated and conspired in the making of said representations. They fully understood each other, and conspired to commit fraud upon petitioners and other landowners in said district, and have committed a fraud upon them. Conger and Thompson & Moseley are in collusion as to the digging of said ditch, and are sharing the fruits of the fraud which they are perpetrating upon the commissioners, petitioners, and the other landowners. The commissioners have taken no steps to restrain Conger, but continue to permit him to act, and continue to pay Thompson & Moseley for alleged work on the estimates and approval of Conger. Said drainage project is not feasible or practicable, and the lands can not be drained or dried properly with the kind of ditch being dug, and it is doubtful if any plan could be executed by which the lands could be drained and made cultivatable, as the fall through then is less than nine feet in a distance of two miles. The Bank of Grantville is the treasurer of the commissioners.

The commissioners and the board of viewers undertook to classify the lands in said drainage district. They put 100 acres of J. H. Arnold's lands in Class A, 20 acres in Class B, 10 acres in Class C, 9.40 acres in Class D, and 125.20 acres in Class E, making a total of 264.80 acres. It is claimed that said lands are subject to

an assessment from year to year, and until the maturity of the bonds, aggregating approximately $9000 or $10,000, and that a lien exists on said lands for that amount in order to aid in paying for said alleged work and the principal and interest of said bonds. The lands of J. H. Arnold would not bring the amount of said assessments, and their fair market value is not in excess of the total amount thereof. If said assessments were enforced against his lands it would amount to a literal confiscation thereof; and instead of enhancing the value of said lands, it would absolutely deprive him thereof. While only 90 to 100 acres of his lands are subject to overflow and really need drainage, there has been included approximately 164 additional acres of his lands, the major portion of which consists of 125 to 150 acres not to be drained, but in order to be bound for said assessments. Of the 100 acres of his lands included in Class A there are about 10 acres belonging to one Ector. There could not be included, under any accurate survey of his lands, more than about 124 acres, 95.32 acres of which would be included in Class A, 7.95 acres in Class B, 7.08 acres in Class C, 6.75 acres in Class D, and 6.75 acres in Class E. On Dec. 21, 1922, the tax-collector issued executions against petitioners for these assessments levied upon their lands, being against all their property generally, there being written across their faces: "New River Drainage District," but the said fi. fas. recite that they are for State, county, and school taxes for 1922. They have been levied on certain lands of petitioners. They are null and void, as petitioners have paid all such taxes required of them for that year. If said fi. fas. were intended to be issued for the drainage assessments, the same could in no event be issued against any of their property except lands included in said drainage district. The levies of said fi. fas. are null and void, because the entries of levy do not accurately describe the property levied on. The sheriff of the county has, by virtue of said fi. fas. and levies, advertised certain lands of petitioners for sale. Even if the fi. fas., levies, and advertisements were legal, no right exists in any one to sell petitioners' lands in an attempt to raise money with which to pay the principal and interest on said bonds, because the title, if any, to said bonds has never passed from the commissioners, and no person can be the legal owner of said bonds, and there exists no right in favor of any one to raise money by assess-

ments, levies, and sales to pay off said bonds. The drainage law is unconstitutional and violative of article 1, section 1, of the constitution of Georgia, and also the fourteenth amendment to the constitution of the United States, in that the terms and provisions of said act and amendments thereto seek to deprive persons of their property without due process of law. The drainage court consists of the clerk of the superior court and the county commissioners of the county where such court exists. In practically every drainage district issues and controversies arise between the district and the county in which it is located, in reference to roads and bridges, which are submitted to the drainage court for decision, said county commissioners constituting a majority thereof, which really amounts to the county passing upon its own case; and petitioners are informed that such was done in the establishment of this drainage district, there being no guide or basis as to what lands should be included in Class A, or any other classification, and especially in Class E; and said classifications would seem to be arbitrary, so far as said act of 1911 and amendments thereto are concerned.

The administratrix of Lucius Arnold, and other petitioners alleged that they had lands located in said district, that fi. fas. had been issued against them by the tax-collector, which had been levied and the lands levied on advertised to be sold by the sheriff, and that each of said fi. fas., with entry of levy thereon, and said advertisements of sale of property are practically in the same form as that against J. H. Arnold. The fi. fas. and levies are each null and void for the reasons set forth by Arnold. They are situated practically the same as Arnold in reference to all matters relating to the drainage district set forth by him. The adopted the allegations of the petition of Arnold and joined therein, in order to avoid multiplicity of suits, and prayed for the same relief as therein prayed. Petitioners prayed, that the tax-collector, sheriff, and deputy sheriff be restrained from further proceeding with the fi. fas. or selling their property thereunder; that the drainage commissioners be enjoined from proceeding with the fi. fas., and from further assessments against their property, and from paying Conger and Thompson & Moseley any further sums of money on account of said work, and from paying Hanchett Bond Company or any holder of said bonds any sum whatever on their principal or

interest, and from withdrawing from the Bank of Grantville funds deposited therein in the name of the board of drainage commissioners; that the Bank of Grantville be enjoined from paying out any funds; that the Hanchett Bond Company be enjoined from seeking to enforce collection of any of said bonds or interest thereon, and be required to deliver up and surrender said bonds; that Thompson & Moseley be enjoined from further proceeding with the cutting of the ditch, or doing any other work in connection with the drainage project; and that the drainage commissioners be enjoined from paying Nall and Conger any further sums for alleged compensation or otherwise. By an amendment petitioners alleged that they did not discover, until the last day of March, 1923; that the drainage bonds had been sold at less than par; that upon discovery of this fact they acted promptly and filed the petition in this case; that the commissioners, Thompson & Moseley, Conger, Nall, and the Hanchett Bond Company all confederated and conspired in the alleged sale of said bonds; that the commissioners, Thompson & Moseley, Conger, and Nall formed a common scheme to sell the bonds at less than their face value; and that the bond company entered into said scheme to purchase the same at less than their face value, and all of said parties are now enjoying the fruits of said illegal purpose.

Thompson & Moseley answered and denied the material allegations of the petition. They set up that they had a valid and binding contract with the board of drainage commissioners for the construction of this work, that said contract has been executed in part by them strictly and in accordance with its terms and provisions, and that there was no right in petitioners to delay or prevent the execution of said contract. They denied all charges of collusion and conspiracy. All the defendants, except the Hanchett Bond Company of Chicago, which had not been served, demurred to the petition, on the grounds: (1) that there is no equity therein; (2) that petitioners had an adequate remedy at law; (3) that the petition does not state facts sufficient to constitute a cause of action against the defendants or either of them; and (4) that the petition is multifarious.

On the hearing of the application for injunction, the only questions submitted to and passed upon by the trial judge were: (1) whether the sales under the fi. fas. issued against the plaintiffs to

enforce the collection of the assessments upon their lands in the drainage district should be enjoined, it being conceded that they were void; and (2) whether the sale of the bonds in the manner alleged authorized the granting of the injunction prayed. The facts touching the sale of the drainage bonds were as follows: The drainage district was regularly established in conformity to law. The plaintiffs in this case were petitioners for its establishment, except Jennie O. Arnold, administratrix of Lucius Arnold, but her intestate was one of said petitioners. The drainage commissioners issued bonds amounting to $55,000, dated July 1, 1922, and bearing interest from date at 8 per cent. per annum. In the fall of 1922 the commissioners sold these bonds to the Hanchett Bond Company. The purchaser agreed to pay par therefor under its contract of purchase; but under another contract between the commissioners and one Forman, cashier of the purchaser, the commissioners agreed to pay Forman a commission of 9 per cent. for the sale of these bonds. These commissions went to the purchaser of the bonds; and the latter contract was entered into to conceal the fact that said bonds were not sold for par. The purchaser did not pay the interest which had accrued on these bonds between their date and the date of their purchase. On April 11, 1922, the Bank of Grantville, the treasurer of the drainage district, sent to the Central Trust Company of Illinois, Chicago, $54,000 of the drainage bonds for the account of the Hanchett Bond Company, with draft on the bond company for $9000. The trust company was instructed by the treasurer to deliver to the bond company $9000 of these bonds upon payment of the draft, and that the remainder of the $45,000 thereof was to be paid for by the bond company with its own interest-bearing certificate of deposit, the bonds to be held by the trust company as collateral for the payment of the certificate of deposit. On Sept. 29, 1922, Nall, the attorney of the drainage district, wrote to Colley, one of the drainage commissioners, that he had received a letter from Clay & Dillon, stating that they were unable to approve the sale of the bonds, for the reason that they knew of no authority of law for the substitution of certificates of deposit for cash in their payment, but there was no objection to placing the bonds in escrow and to paying for them in cash from time to time. Notwithstanding this fact said agreement was carried out.

On July 11, 1922, Charles M. Powell, who represented the Hanchett Bond Company in this transaction, wrote a letter to the attorney of the commissioners, enclosing a copy of the commission agreement, in which he stated that the agreement " will be satisfactory to us in connection with making the par contract for the bonds," that " Mr. Forman is cashier of the Hanchett Bond Co.," and that " this is the form that we frequently use in connection with this kind of agreement." The drainage district was to draw monthly drafts for the purchase-money of these bonds, accompanied by engineer's estimates showing that the amount of each draft was due for work already performed. On Nov. 29, 1923, the first draft of the Bank of Grantville for $9000 was paid by the purchaser through the trust company, and on that date the trust company delivered to the bond company $9000 of these bonds, one bond having been previously delivered to the purchaser. On the same date the trust company received from the purchaser its non-interest-bearing certificate of deposit for $40,950, to be held in escrow for the account of the drainage district. Up to the time of the hearing of the application for injunction the drainage district had received on the purchase of the bonds sums aggregating about $30,000. The attorney and the engineer for the drainage district and the contractor for the project took active parts in securing the sale of the bonds under the above arrangement. The attorney fully approved all of the above transactions. The other parties were active in aiding the commissioners in the sale of the bonds under this arrangement. On Oct. 30, 1922, the attorney presented a bill for $2750 for services as attorney for the district, and the commissioners paid the engineer $3000 on his services as such and were paying him $100 per month in addition. The contract between the commissioners and the contractor is dated July 16, 1921. It contains a provision that " neither party shall be bound hereby in the event the bonds of said district should not be issued and sold, for the purpose of financing the work, . . or other arrangements be made by the party of the second part [the commissioners] for the full financing of said work." The drainage bonds were duly validated. Under the contract between the commissioners and the contractor the main ditch in the district had been completed for 9-2/10 miles, leaving only 3600 feet to be completed, and the lateral ditch had been partly cleared, but no

excavation work had been done. Large sums of money had been expended by the commissioners in the execution of the improvement, and the money expended had been received from the sale of the drainage bonds. All this was done with the knowledge of the plaintiffs. In the summer of 1921 the drainage commissioners proposed to sell these bonds to J. H. Arnold, one of the plaintiffs. for $50,000, and give him a commission of $5000, thus permitting him to get them for $45,000. Charles M. Powell, at the hearing of the application for injunction, deposed " that of his own knowledge said issue of bonds have been disposed of by. said bond company in due course, and that said bonds are now in the hands of purchasers for value prior to the filing of this suit."

The trial judge enjoined further proceedings on fi. fas. against the plaintiffs. He further enjoined the drainage commissioners from in any wise enforcing present or future assessments against plaintiffs for the purpose of paying the principal or interest of the bonds to the Hanchett Bond Company or to any holder thereof, except a bona fide holder for value without notice. He further enjoined the commissioners from paying to Thompson & Moseley any further sums of money on account of the work under their contract for construction of this project, and from paying to Nall or Conger any further sum for compensation; and restrained Thompson & Moseley from proceeding with the cutting of the ditch, or with any work under their contract with the commissioners. The court afterwards modified its temporary injunction, by permitting Thompson & Moseley to complete the main ditch at their own risk and expense, and without prejudice to the rights of plaintiffs, with no right to compensation for such work allowed under the modified order, unless the same was established by the final decree of the court; and by permitting D. Conger to make inspections and estimates of the work permitted under the modified order and in accordance with the contract, to be done at his own risk and expense and without prejudice to the rights of any of the plaintiffs, and with no right in Conger to compensation for services allowed thereunder, unless the same were established by the final decree of the court, and in that event the compensation to be as per contract. The order of modification was made without prejudice to the rights of the plaintiffs. To the judgment granting the temporary injunction the defendants (other than Hanchett Bond Company) excepted.

*Anderson, Rountree & Crenshaw, W. A. Nall,* and *Hall & Jones,* for plaintiffs in error.

*W. C. Wright* and *A. H. Freeman,* contra.

HINES, J. (After stating the foregoing facts.)

1. By agreement between the parties the trial judge, upon the hearing of the application for injunction, was to pass upon but two questions, and to grant or refuse an injunction in accordance with his decision thereof. One of these questions was, whether injunction would lie to enjoin the sales of the lands of the plaintiffs, under the levies thereon of the executions which had been issued to enforce the collection of the assessments made thereon to meet the principal and interest of the drainage-district bonds; it being conceded by all parties that these executions were void, not because the assessments were void, but because they were not issued against the lands of the plaintiffs which had been assessed, but generally against all the property of the plaintiffs. The other question was, whether these assessments should have been enjoined under the facts of this case. We confine ourselves to these questions. It is contended by the defendants that the plaintiffs had an ample remedy by illegality to stop the sales of their lands under these void executions, and that for this reason injunction would not lie.

Did the plaintiffs have an adequate remedy by affidavit of illegality? If each owner of land could file an affidavit of illegality to an execution issued to enforce the collection of an assessment thereon to pay the principal or interest on drainage bonds (*Rice* v. *Macon,* 117 *Ga.* 401, 43 S. E. 773; *Mayor &c. of Gainesville* v. *Dean,* 124 *Ga.* 750, 53 S. E. 183), such remedy would not prevent several owners of such property from joining in a common attack on the validity of the assessments or the legality of the executions issued to collect them, in order to save a multiplicity of suits. *Sanders* v. *Gainesville,* 141 *Ga.* 441 (81 S. E. 215); *Hall* v. *Macon,* 147 *Ga.* 704 (95 S. E. 248); *Goolsby* v. *Board of Drainage Commissioners,* 156 *Ga.* 213 (119 S. E. 644). So we are of the opinion that injunction will lie, at the instance of several landowners in a drainage district, to restrain the enforcement of void executions issued to collect assessments levied upon their lands in such district.

2. We come now to consider the more serious questions involved in this case, and to determine whether the trial judge erred

in granting the sweeping injunction which he issued. The trial judge rested his decision upon the facts that the bonds were illegally sold for less than par, and that the attorney for the drainage commissioners, the engineer in charge of this project, and the contractor had illegally confederated and conspired with the purchaser of the bonds in illegally acquiring them. The facts surrounding the sale of these bonds were not fully developed upon the hearing. It seems that the Hanchett Bond Company made a bid of 91 cents on the dollar for these securities. Inferentially this bid was rejected by the drainage commissioners, on the ground that it was an open and brazen infraction of the statute which prohibits the sale of drainage bonds at less than par. The commissioners and the bond company then undertook to whip the devil around the stump. Two contracts for the sale of these bonds were made. One was between the commissioners and the bond company, by which the latter agreed to buy these bonds and pay for them at par. The other contract was between the commissioners and one Forman, by which the commissioners agreed to pay him a commission of 9 per cent. for negotiating the sale of these bonds. These contracts were not introduced in evidence on the hearing of the application for injunction. No reason appears for the failure of the plaintiffs to put them in evidence. Forman was the cashier of the bond company. Plaintiffs allege, and the judge was authorized to find, that this commission went to the bond company, and that this arrangement was a scheme and subterfuge by which the parties undertook to evade the provision of the statute forbidding the sale of these bonds at less than par. The attorney for the commissioners, their engineer, and the contractor for this work knew that these bonds were being sold at less than par, and took an active part in bringing about the execution of these contracts. In the contract with the contractor there is a provision that it was not to be binding upon the parties unless these bonds were sold, or some other arrangement had been made by the commissioners for financing this project. The pay of the attorney and the engineer depended upon their sale. The attorney approved the contracts under which the bonds were sold.

Was the sale of these bonds for less than par illegal? The drainage law provides that " The commissioners may sell these bonds at not less than par, and devote the proceeds to the payment of the

work as it progresses." Acts 1911, p. 108; Acts 1918, p. 147; Acts 1921, p. 185; Park's Supp. Code 1922, p. 67, § 439(ii). Under this law the drainage commissioners are only authorized to sell these bonds at par. They can not directly or indirectly sell them for less than par. Any sale of them at less than par is illegal and voidable. The par value of an interest-bearing bond on the day of its issuance is the principal thereof. On any date subsequent to its issuance, such par value is the sum of the principal and accrued interest. Duval County v. Knight, 42 Fla. 366 (29 So. 408); State of Illinois v. Delafield, 8 Paige (N. Y.), 527, affirmed in 2 Hill (N. Y.), 159, 26 Wend. (N. Y.) 192; Ft. Edward v. Fish, 156 N. Y. 363 (50 N. E. 973), affirming 86 Hun (N. Y.), 548; Citizens Sav. Bk. v. Greenburgh, 173 N. Y. 215, 65 N. E. 978; People v. Miller, 84 App. Div. 166 (82 N. Y. Supp. 607); Hogg's Appeal, 22 Pa. 488; Diefenderfer v. State, 13 Wyo. 405 (80 Pac. 667); Smith v. State, 99 Miss. 859 (56 So. 179, 35 L. R. A. (N. S.) 789); Miller v. Park City, 126 Tenn. 427 (150 S. W. 90, Ann. Cas. 1913E, 83); 2 Dill. Mun. Cor. (5th ed.) § 895; Peery v. Los Angeles, 187 Cal. 753 (203 Pac. 992, 19 A. L. R. 1044); Davies County Ct. v. Howard, 13 Bush (Ky.), 101; Moose v. Alexander County, 172 N. C. 419 (90 S. E. 441, Ann. Cas. 1917E, 1183); Hunt v. Fawcett, 8 Wash. 396 (36 Pac. 318); 15 C. J. 628, § 339; Wilson v. Hebert, Tex. Civ. App. (174 S. W. 861).

The allowance of commissions to the purchaser of bonds violates a statute which prohibits their sale for less than par, and as between the maker of the bonds and the purchaser is void. Whelen's Appeal, 108 Pa. 162, 1 Atl. 88. Where the sale of bonds below par is prohibited, a contract to sell them nominally at par, but to pay a commission to the purchaser, is void. Hunt v. Fawcett, supra. Under such a statute a sale of bonds, drawing 8 per cent. interest, in part for cash and in part for time certificates of deposit running from three to eighteen months with interest at 2 per cent., is unauthorized. Moose v. Alexander County, supra. Selling bonds bearing 8 per cent. interest from date, and taking a non-interest-bearing deposit certificate therefor, was virtually selling them at less than par. Delafield v. Illinois, 26 Wend. (N. Y.) 192. So we are clearly of the opinion that the drainage commissioners were without authority to make the contract with Forman for the payment of commissions for the sale of these

bonds, if the purchaser was to get such commissions, and the scheme was one to conceal the fact that the sale of these securities was for less than par. We are also of the opinion that the commissioners could not accept from the purchaser of these bonds the face thereof at any time subsequent to the date of their issuance, and permit such purchaser to collect the accrued interest due thereon. The commissioners were without authority to accept from the purchaser a non-interest-bearing certificate of deposit in lieu of money, and to deliver these bonds to the purchaser, thus enabling the purchaser to receive the accrued interest thereon prior to the actual payment of the purchase-price. This being so, what is the effect of this transaction upon the contract for the making of this improvement? Under the circumstances, should the court have granted the temporary injunction which it did grant in this case? The court seemed to treat the contract for the sale of these bonds as absolutely void, because of the illegal contract with Forman for the payment of commissions for their sale which went to the purchaser, and which all the parties intended to go to the purchaser.

The contract between the drainage commissioners and the Hanchett Bond Company was for the sale of these bonds at par, and was in all respects, so far as the record in this case discloses, a legal and binding contract. This contract binds the bond company to pay for these bonds in accordance with the terms of the drainage act. If the purchaser has not paid for them at their par value, it can be made to do so. This contract, valid on its face and by its terms, is not rendered invalid by reason of the illegal and void contract entered into between the drainage commissioners and Forman for the payment of a commission to the latter for the sale of these bonds; and this is true although the purchaser was to get the benefit of this commission. But conceding that the taint of the commission contract affects and renders void the contract for the purchase of these bonds, how then does this matter stand? The drainage commissioners would be entitled to an injunction restraining the purchaser from disposing of these bonds and the proceeds thereof, where such bonds are negotiable, as the drainage district would be liable to pay the same to a bona fide holder to whom they had been transferred without notice of the illegality in their sale by the commissioners. State of Illinois *v.* Delafield, and Delafield *v.* Illinois, supra. But before the com-

missioners could rescind the contract and recover these bonds, they would have to restore to the purchaser the money which they have already received from the sale of the bonds. Civil Code (1910), § 4305. If the commissioners undertook to rescind the contract of sale, they would be entitled to have returned any of these bonds remaining in the hands of the purchaser and to be paid the par value of those disposed of by the purchaser. County of Lawrence v. Northwestern R. Co., 32 Pa. 144. Conceding that the contract for the sale of these bonds is illegal and void because they were sold at less than par, should present and future assessments for their payment, and the payment by the drainage commissioners tó the contractor, the attorney, and the engineer, be enjoined, although it should be found that the commissioners, the contractor, the attorney, the engineer, and the purchaser confederated to sell these bonds at less than par in the teeth of the drainage act? No attack is made by the plaintiffs on the contracts between the drainage commissioners and the contractor, the attorney, and the engineer, other than that they are void because the contracts for the sale of the bonds are void. While the commissioners, the purchaser, the contractor, the attorney, and the engineer may be liable to the drainage district for the difference between the par value of these bonds and the amount received from their sale, on the ground that these parties were joint conspirators to effect this sale, this fact would not render the contracts between the commissioners and the contractor, the attorney, and the engineer illegal and void. The taint in the contract for the sale of these bonds does not vitiate these other contracts.

But this is not a proceeding by the drainage district to rescind the contract of sale. It is a proceeding by landowners in this district to enjoin present and future assessments for the payment of these bonds; and this action on their part was taken after these bonds had been delivered by the drainage commissioners, with a large part of the purchase-money paid and a large sum, with the knowledge of plaintiffs, expended under the contract between the commissioners and the contractor for the drainage of this district. If action had been taken by the plaintiffs before these bonds were delivered and before funds arising from their sale had been expended in this project, any contract for the sale thereof at less than par could have been enjoined, and thus nipped in the bud.

The plaintiffs were petitioners for the creation of this district. One of them knew that the drainage commissioners were undertaking to sell the bonds for less than par. There is no denial on their part of knowledge of the fact that the commissioners made the contracts for the sale of these bonds. They knew that the proceeds of the bonds were to be used in making this improvement. They saw that the work was in progress, permitted it to progress, and knew that large sums of money were being expended in the improvement. They knew that bonds would be sold for the purpose of raising these funds, and that these funds arose from the proceeds of the sale of the bonds. They stood by and permitted such expenditures. They are not now entitled to an injunction. *Holt* v. *Parsons,* 118 *Ga.* 895 (45 S. E. 690).

The right of the drainage commissioners against the original purchaser of these bonds to recover the par value thereof is not now for decision by this court. Certainly the original purchaser was chargeable with notice of the terms of the drainage act of 1911, including the provision which prohibits the sale of the bonds at less than par; and such original purchaser would not be a bona fide purchaser, if he bought the bonds at less than par. Anthony *v.* County of Jasper, 101 U. S. 693 (25 L. ed. 1005). If the commissioners have a contract by which the original purchaser was to pay the par value of these bonds, an action would lie thereon against such original purchaser to recover such value; and this action would not be defeated by the illegal contract for the payment of a commission. Certainly the commissioners could proceed to rescind the contract of sale if it was void because it provided for the sale of the bonds at less than par, or upon restoring to the purchaser any money received thereon; and would be entitled to recover any bonds remaining in the hands of the original purchaser and the par value of those disposed of by such purchaser. If all of the bonds had been disposed of by the original purchaser, then the drainage commissioners would be entitled to recover the par value of all of such bonds.

The sale of these bonds at less than par does not affect their validity in the hands of innocent purchasers. Citizens' Savings Bank *v.* Greenburgh, 173 N. Y. 215 (65 N. E. 978); Woods *v.* Lawrence County, 1 Black, 386 (17 L. ed. 122); Mercer County *v.* Hacket, 1 Wall. 83 (17 L. ed. 548); Cromwell *v.* County of Sac,

96 U. S. 51 (24 L. ed. 681); County of Knox *v.* Aspinwall, 21 How. (U. S.) 539 (16 L. ed. 208); Whelen's Appeal, 108 Pa. 162 (1 Atl. 88).

If the plaintiffs have been damaged by the commissioners and their confederates by the illegal manner in which they sold these drainage bonds, the plaintiffs will have to resort to their remedies at law for redress. They are not now entitled to the remedy of injunction, the effect of which is to entirely stop the completion of this enterprise.

4. We are of the opinion that the court erred in enjoining the present and future assessments for the payment of these bonds and all payments by the drainage commissioners to the contractor, the attorney, and the engineer under the contracts made by the former with these latter parties. The court did right in enjoining the enforcement of the executions against the plaintiffs which are conceded by the defendants to be null and void. The judgment of the court enjoining these fi. fas. is affirmed, and the judgment granting an injunction in all other matters is reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

Russell, C. J., concurs specially.