CITY OF BAINBRIDGE *et al.· v.* JESTER *et al.; et vice versa.*

1. The act of 1920 (Acts 1920, p. 741), which authorized the City of Bainbridge to pave certain streets, was not unconstitutional for the reason that it created a debt of the City of Bainbridge, in violation of art. 7, sec. 7, par. 1, of the constitution, nor because the power conferred upon the City of Bainbridge was the enactment of special legislation as forbidden by art. 1, sec. 4, par. 1, of the constitution.

2. The judge of the superior court properly held that the bonds issued for paving, under the provisions of the act of 1920, were not a debt of the City of Bainbridge, but that ·the city, by virtue of that act and the ordinances passed pursuant thereto, has merely contracted with the bondholder to become his agent in the collection, and to pay over to the bondholders the sums lawfully assessed against the property ownér for paving.

3. The paving which the complainants seek to enjoin was constructed with their knowledge in front of their lots which the pavement adjoined and abutted, the construction involving large sums of money on the part of the contractor. After the completion of the work and the acceptance of the paving by the city authorities, it was too late for complainants to object, especially after the city council had afforded ample opportunity to the complainants to object to the execution of the contract and to the consequent assessments now sought to be corrected.

Nos. 3781, 3782. FEBRUARY 14, 1924. REHEARING DENIED MARCH 1, 1924.

Injunction. Before Judge Custer. Decatur superior court. April 24, 1923.

T. W. Jester and other named citizens of the City of Bainbridge presented a petition in behalf of themselves and such other citizens and taxpayers of Bainbridge as might be interested, against the City of Bainbridge, its mayor and aldermen, and chief of police, to enjoin the issuance and levy of fi. fas. by which the City of Bainbridge might proceed, and threatened to collect, by a sale of the

property of the petitioners, the cost of the paving of certain side-walks constructed on the streets of the city, upon which the lots of the petitioners abutted. In the original petition the prayers for injunction were based upon the ground that the fi. fas. represented a debt of the City of Bainbridge, based upon the contract for pavement, made at a time when there were not sufficient funds in the treasury of the City of Bainbridge to discharge said contract, and when an amount of money sufficient to discharge said contract could not have been legally raised during the year by lawful taxes, and when there was not sufficient money in the treasury together with such taxes as could have been legally raised to discharge the contract; and upon the further ground that by the terms of the contract the payments were to be through a series of several years. It is alleged, that after the contract was made the streets described in the ordinance were paved by the contractor under the terms of the contract as made; that the act of the legislature approved August 10, 1920, which fixes a lien upon the property of taxpayers abutting upon streets which the municipality might determine to pave, is unconstitutional and void, because it is special legislation where there is a general law of the State in existence on the same subject, and because it is in violation of article 7, section 7, paragraph 1, of the constitution of the State (Civil Code, § 6563); that the ordinance of the City of Bainbridge providing the method and manner of paying for said work, in so far as it provided for paying for the pavement in ten annual payments, violates the constitution in creating a new debt without submitting to the voters of Bainbridge the question of incurring a debt for the laying of the sidewalks or issuing bonds for paving the sidewalks; that the cost incurred in paving the sidewalks amounts to more than $60,000, and there was not sufficient money in the treasury of the City of Bainbridge, together with taxes that could be legally raised during the year, to pay the cost of paving said sidewalks; and that the amount of the cost of said paving exceeds one fifth of one per cent. of the assessed value of all the taxable property within said municipal corporation. The contract is further attacked on the ground that it was the creation of a new debt and not a temporary loan, nor was it to supply a casual deficiency of revenue. It is set forth in the petition, that although it is recited in the bonds that "said bond or bonds shall in no event become a liability of the city

· of Bainbridge," the action of the municipality in issuing the bonds is prohibited by article 7, section 7, paragraph 1, of the constitution, without first calling an election of the qualified voters and having this new debt authorized by a popular vote, which was not done in this case; that bonds were issued in an amount in excess of $40,000 without authority of law as provided by article 7, section 7, paragraph 1, of the constitution; that the bonds were never validated in the manner provided by law, nor was any attempt made to have them validated, but the municipal authorities proceeded, under the amended charter as contained in the act of 1920, to assess against the abutting-property owners the cost and expense of said pavement, and issued more than $40,000 of the bonds, an amount in excess of one fifth of one per cent. of the taxable value of the property of the municipality; that the act approved August 10, 1920 (Acts 1920, p. 741), is unconstitutional, for the reason that it violates article 1, section 4, paragraph 1, of the constitution (Civil Code, § 6391), providing that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby." It is alleged that the foregoing act of 1920, amendatory of the charter of the City of Bainbridge, is in violation of the due-process clause of the constitution as contained in article 1, section 1, paragraph 3 (Civil Code, § 6359), in that no provision is made in the act for a notice of any kind or character as to the right of the city to place the tax assessment upon the taxpayers or as to the benefit to be derived therefrom.

Upon the hearing the trial judge passed the following order: "The case as made by the petition attacks certain acts of the General Assembly, ordinances of the City of Bainbridge, and a contract made pursuant to same, whereby certain street paving was done in said city; and the issues thus raised present a new and novel proposition of law, which does not appear to have been heretofore presented to the courts. By the act of 1920, page 741, the City of Bainbridge was given the power to authorize the paving of streets in the City of Bainbridge by ordinance, to let the contract for such paving when the costs had been ascertained, to apportion

such costs to the abutting-property owner, and such assessments remaining unpaid after thirty days notice thereof may be divided into ten annual installments, with interest at seven per cent. per annum, and bonds may be issued 'in the aggregate amount of such assessments remaining unpaid, bearing date thirty days after the passage of the ordinance levying the said assessments,—which bonds shall in no event become a liability of the City of Bainbridge issuing the same.' The act provides that said bonds shall be payable in ten equal annual installments, and bear interest at six per cent., and shall be designated as 'street improvement bonds.' The act further provides: 'Said bonds shall be sold at not less than par, and the proceeds thereof applied to the payment of the contract price and other expenses, by the said mayor and aldermen, or such bonds in the amount that shall be necessary for that purpose shall be turned over and delivered to the contractor at par value in payment of the amount due him on his contract.' The relief sought is injunction against the mayor and chief of police, to prevent the levy and sale of the property of the petitioners under the assessment executions provided for by the act. The holder of the bonds is not before the court, although his affidavit was read indicating that he had no notice of any irregularity or invalidity affecting his bonds.

"If the bonds were the obligation of the City of Bainbridge and the holder of the bonds was before the court, I would have no difficulty in deciding that the city was estopped to deny their validity. *Town of Climax* v. *Burnside*, 150 *Ga.* 556 [104 S. E. 435]. But the city has issued these bonds under the 'special funds doctrine,' clearly in an effort to evade the requirement of an election to authorize bonds, and perhaps with a benign desire to facilitate improvements and make it less rigorous upon those of moderate circumstances to pay the costs of same; and under this view of the matter, alone, can I clearly say that the entire transaction does not offend the constitutional provisions which are urged against it. I therefore hold that said bonds are not a debt of the City of Bainbridge; but that the City of Bainbridge, by virtue of the act and the ordinance passed pursuant thereto, has contracted with the bondholder to become its agent in the collection and payment to the said bondholder the sums found to be lawfully assessed against the property owner for said street paving, that said property owner

by his acquiescence has estopped himself to dispute the necessity for, the costs of, or the validity of said undertaking, provided there has been a legal subsisting contract as a basis for said assessments. See *Hall* v. *City of Macon*, 147 *Ga.* 709 [95 S. E. 248], and also *Almand* v. *Pate*, 143 *Ga.* 718 (5) [85 S. E. 909].

"We come next to the contention that the contract is illegal; and this presents a greater difficulty, and one which is solved with more or less hesitancy on the part of the court. By the ordinance of August 29th, 1921, it was recited that bids had been received for said paving from three contractors: I. Kwilecki's Sons $1.96 per square yard, Clayton Mitchell Company $1.95 per square yard, and Davis Construction Company $1.65 per square yard, for paving said sidewalks with concrete and cement surface, to be paid for under the terms and provisions of said ordinance and of the amendments to the city charter approved August 10th, 1920, and further on: Said contractors also bid for said paving to be done and settlement for same to be made on a cash basis at $1.56, $1.38, and $1.29 per square yard, each respectively. The contract made with the Davis Construction Company was for a consideration of one and 65/100 dollars per square yard, and payable in bonds authorized by the act of 1920; and the two bids attached to said contract, one for $1.65 per square yard, and one for $1.29 per square yard, was for the identical same specifications, excepting that the latter was payable in cash and the former in assessment bonds; and the court unhesitatingly holds that the giving of said bonds in settlement of the work done under said contract was tantamount to a sale of said bonds at less than par, and that said contract was illegal and the assessments thereunder were illegal.

"But it is insisted that the petitioners are estopped to complain, by reason of their laches and their failure to act before said improvements were completed and said bonds had found their way into the hands of innocent purchasers. If I am correct in holding that these bonds are not a debt of the City of Bainbridge, and that the city has become the agent of the bondholder to collect and pay over the assessments as they become due, then the position of the defendant is untenable. What then is the effect of the illegality of a contract on the power to make and levy assessments on the abutter's property? 'If a contract for the construction of the public improvement has been let and an assessment levied to pay

such contract price, the validity of such contract is essential to the validity of the assessment; since otherwise the assessment would be levied to pay the claim not legally due against the city.' 1 Page and Jones on Taxation by Assessment, 483. 'No lien can be fixed, in invitum, against abutting property to pay an illegal contract made by a city in the construction of public improvements.' Schweissau *v.* Mahan, 110 Cal. 543 (42 Pac. 1065). 'In the present case the amount sought to be collected by assessment against abutting property was essentially fixed on the basis of the costs of the improvement specified in an illegal contract between the city and the contractor for repaving the street. In order to determine what amount should be claimed as a lien on the property and for which execution should issue against it, resort must necessarily be had to the illegal contract.' *Sanders* v. *City of Gainesville,* 141 *Ga.* 444. This case is also authority for the proposition that the plaintiffs are not estopped. See also *Hall* v. *Macon,* supra, on this point. I can add nothing to what has been said by the Supreme Court in the above-stated case, and am bound by it in the instant case; and it is therefore ordered that the temporary restraining order heretofore granted be and the same is hereby continued as subsequently modified."

*W. O. Fleming, R. G. Hartsfield,* and *Candler, Thomson & Hirsch,* for plaintiffs in error in main bill of exceptions.

*G. G. Bower* and *M. E. O'Neal,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) In the brief of counsel for defendants in error a motion is made to dismiss the main bill of exceptions, upon the ground that there is no sufficient assignment of error. It is insisted that the judgment should be affirmed, because no error is sufficiently assigned, specified, or submitted to the Supreme Court, and for that reason there is nothing for this court to pass upon or consider, and the court is without jurisdiction to consider the present writ of error. Section 6224 of the Civil Code of 1910 declares that "bills of exceptions must distinctly specify the points on which error is assigned." In the bill of exceptions now before us the decree of the court is set forth verbatim, and the assignment of error immediately following is as follows: "To which order and judgment of the court the defendant, now plaintiff in error, to wit, the City of Bainbridge, its mayor and aldermen, and chief of police, then and there excepted

and now except and assign the same as error on the ground that the same is contrary to law." Numerous authorities are cited by counsel to support the proposition that this assignment fails to "distinctly specify," as required by the eighth rule of this court (§ 6224 Civil Code), in what particular, wherein, how, why, or to what law the decree is contrary. Some of the rulings cited were expressly overruled in *Lyndon* v. *Ga. Ry & El. Co.,* 129 *Ga.* 353 (58 S. E. 1047), and the other citations in the brief refer to bills of exceptions to judgments rendered in actions at law. The case now before us is an equitable petition with an application for injunction, and therefore presents an exception to the rule referred to in the authorities cited by the defendant in error. A different rule is provided as to the definiteness or amount of specification required in assignments of error upon the grant of an injunction, and this court has uniformly ruled that in such cases an assignment of error that the judgment or decree rendered was contrary to the law and the evidence or contrary to law or contrary to the evidence is in such a case sufficient. See *Anderson* v. *Newton,* 123 *Ga.* 512 (51 S. E. 508) ; *Kirkland* v. *A. & B. Ry. Co.,* 126 *Ga.* 246 (55 S. E. 23). The reason for this distinction, and why less definite specification of reasons set forth why the judgment complained of is error, is found in the wide discretion allowed the chancellor in the grant of extraordinary relief. I am very loath to avoid the decision of any issue by the summary dismissal, upon mere technical grounds, of bills of exceptions by which alleged errors are sought to be reviewed and by means of which alone they can be corrected. The rulings of this court as to the assignment of errors in equitable cases are in accordance with the provisions of the code, which requires the courts of last resort in this State to decide any question presented for adjudication if there is enough in the record to enable the court clearly to understand the point upon which the adjudication is sought. The motion to dismiss is therefore overruled.

1, 2. Upon the petition substantially stated in the statement of facts the judge of the superior court granted a temporary restraining order enjoining and restraining the City of Bainbridge, its mayor and aldermen, and chief of police from issuing or levying any fi. fas., advertising or selling any property of any person, based upon the assessment made for the pavement of the sidewalks of

that city, or from attempting to collect any assessment for paying for the paving of the sidewalks of the City of Bainbridge, based on the act of the legislature approved August 20, 1920, or the city ordinance passed in pursuance thereof on August 1, 1921; and required the defendants to show cause, etc. This order, on March 15, 1923, was so modified that any person who desired to pay his assessment might do so, and the officials were authorized to receive any and all such voluntary payments. After the allowance of various amendments both to the answer and the petition and after a full hearing, the judge of the superior court entered an order on April 24, 1923, holding that the bonds issued to provide for the assessments against landowners of city lots abutting upon streets for the paying for the pavement were not a debt of the City of Bainbridge, and that the municipality had assumed no liability other than its agreement to become the agent of the bondholders to collect and pay the sums lawfully assessed for said paving, and that the property owners had estopped themselves to dispute the necessity for, the cost of, or the validity of the undertaking, provided that there was a legal subsisting contract as a basis for the assessment. However, the judge held that the contract was illegal, and that for that reason the assessment was illegal; and he continued of force the temporary restraining order previously granted, forbidding any levy or sale of the property of the petitioners. The City of Bainbridge, its mayor and aldermen, and chief of police except to this judgment.

We think that the court properly ruled that the bonds were not a debt of the City of Bainbridge, and that the only obligation of the city under the terms of the act of 1920 (Acts 1920, p. 741) was to act as agent for the bondholders in collecting and paying over to the bondholders any sums that might be due them by levy and sale. The judge did not err in holding that if the contract for paving was valid, the property owners who were assessed each his pro rata share of this total cost represented by the bonds would be estopped to dispute the necessity for the public improvement or the amount of the assessment or the validity of the ordinance. But we think the learned trial judge erred in holding that the contract under which it was agreed that the bonds were issued, the contract by the terms of which the contractor who laid the pavement agreed to accept his pay in bonds, is invalid.

We shall first consider the question as to whether the contract was invalid for the reason that it violated the legislative requirement which prohibited any sale of the bonds below par. It appears from the record that there were three bidders for the contract to pave the sidewalks at Bainbridge. Each bidder submitted a bid to lay the pavement at so much per square yard, and to take the bonds to be issued in payment in full for the sidewalks when completed. Each contractor also bid to construct the sidewalks for a lesser sum per square yard, payable in cash at the completion of the contract. The bid of Davis and Company both in respect to payment in cash or in bonds was the lowest, and the mayor and aldermen accepted the bid in which Davis offered to accept his pay in bonds at $1.65 per square yard. We do not think that this circumstance alone is sufficient to show a sale of the bonds below par. All of the bidders merely recognized the difference between cash and time price. It may be true that none of the bidders wished to buy bonds for an investment, perhaps for the very potent reason that each of them required all of their assets in order to remain in the business of public contracting; and if all of the property owners affected by the assessment had paid, as they had the right to do, within thirty days the assessment for the sidewalk paving, no bonds would have been issued. It appears from the record that the property owners were each notified of the assessment, and the notice in each instance stated that the cost of paving was $1.65 per square yard, but the city clerk appended to each notice a statement that by an arrangement with the contractor the assessment could be discharged by the payment of a lesser sum which appears to have been based upon a calculation made at the rate of $1.29 per square yard instead of $1.65. This left it within the power of each property owner, even after the assessment against him for the contract price, to have the advantage of the cash bid although the city had not accepted that bid. From this it appears that there was no partiality in the preference of one property owner as against another; and so the real question presented is whether or not it can be presumed from the fact that bonds delivered to a contractor presumably at par can be held to have been sold below par. In other words, is there anything in the contract itself which shows it to be invalid because the bonds were accepted in payment for the construction of the sidewalks, instead of money, even though the price charged for the

33

construction, if payable in bonds, exceeds the offer to construct for cash.

The order of the judge of the superior court in this case adjudged that the injunction should be continued upon the ground that the contract was invalid, and that the resulting assessments and the fi. fas. issuing thereon were void, because it was plain that the contract is an evasion and violation of the provisions in § 6 of the act of 1920 (Acts 1920, p. 741, 743), because the bonds were sold below par, and the contract under which the assessments were made shows that the assessments were not in fact made in accordance with law, as shown by the fact that those who paid cash were assessed only $1.29 per square yard, while the property of those who were unable to pay cash was assessed at $1.65 per square yard. This can be plainly seen from the order of the judge as set forth in the statement of facts. To this ruling the plaintiffs in error, the City of Bainbridge and others, excepted. In rendering his decision the judge did not pass upon any of the questions raised in the petition in regard to the constitutionality of the act of 1920, supra; and although the decision of the court was favorable to the defendants in error, they filed a cross-bill of exceptions, asking the judgment of this court on the alleged unconstitutionality of the foregoing act as stated and presented in their petition. We shall first deal with the cross-bill. The exception raising the point that the provision of the act of 1920, supra, providing for the levy and assessment and the issuance of bonds by the City of Bainbridge, is the creation of a new debt, is without merit, for the reasons stated in the recent case of *City of Valdosta* v. *Harris*, 156 *Ga.* 490 (119 S. E. 625), and cases therein cited. The exception that the act is unconstitutional because in violation of art. 1, sec. 4, par. 1, of the constitution, which provides that no special law shall be enacted in any case for which provision has been made by an existing general law, is also without merit, because this court has held contrary to this contention in *Walthour* v. *Atlanta*, 157 *Ga.* 24 (120 S. E. 613).

There is no merit in any of the exceptions based upon constitutional grounds. The judgment of the lower court upon the cross-bill is therefore affirmed.

3. Conceding but not deciding that the bonds were sold below par, still it is unnecessary to pass upon that question at this time,

because a majority of the court are agreed that the defendants in error are estopped, after the contractor has fully complied with his contract, and has expended large sums of money, and after the paving has been accepted by the city, to assert the invalidity of the assessments and the fi. fas. issued thereupon. The lower court held that there was no laches. We are of the opinion that the defendants in error cannot assert this, because they were bound to know what was going on; they could see the pavement in front of their respective property as it was constructed. They were notified by publication of all of the proceedings leading up to the contract upon which the assessments are based, and were afforded an opportunity to object before the contract was awarded. After having received all the benefits that can accrue from the pavement, they will not be heard to contend for the first time that the contract, which, if it is illegal, they could have prevented, is invalid. *Iverson* v. *Saulsbury*, 65 *Ga.* 725; *Southern Marble Co.* v. *Darnell*, 94 *Ga.* 232 (21 S. E. 531); *Vandiver* v. *Byrd-Matthews Lumber Co.*, 146 *Ga.* 117 (90 S. E. 960); *Warner* v. *Hill*, 153 *Ga.* 510 (112 S. E. 478); *Arnold* v. *Board of Commissioners*, 156 *Ga.* 733 (120 S. E. 310).

So we hold that the judge erred in granting the injunction.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except*

GILBERT, J., dissenting. I am unable to concur in the ruling made in the third headnote, and am therefore forced to dissent from the judgment of reversal. The trial judge, under the pleadings and the evidence at the hearing for temporary injunction, found that, contrary to the statute under which the city was acting, it sold the bonds at less than par. The statute in question is mandatory, as follows: "*Said bonds shall be sold at not less than par*, . . or such bonds in the amount that shall be necessary for that purpose may be turned over and delivered to the contractor *at par value in* payment of the amount due him on his contract," etc. It appears to me that the evidence demanded the finding that the bonds were sold at less than par. The paving contract entered into between the City of Bainbridge and the paving contractor, whereby the bonds were turned over and delivered to the contractor at less than par, was therefore an illegal and invalid contract. "In a case of the character just indicated, no estoppel will arise against

an abutting-property owner, on account of the fact that the pavement was completed before the filing of the petition, to deny the validity of the assessment, especially where such property owner entered his protest against the construction of the improvements." *Sanders* v. *Gainesville,* 141 *Ga.* 441 (1 *a, b*) (81 S. E. 215). Moreover estoppel is not pleaded as a defense, and therefore the judgment of the trial judge should not be reversed on the ground that the petitioners were estopped. The opinion of the trial judge, with authorities cited, is set out above, and it is sound and convincing. The principles ruled in the first and second headnotes are in accord with previous decisions of this court. While this is true, manifestly they sanction a new encroachment upon the property rights of private citizens. It is indirect taxation by the municipality under a method not foreseen by the framers of the Georgia constitution. The power of cities to incur debts is strictly limited, under the constitution of Georgia. Clearly this, even though legal, is an ingenious method of avoiding the constitutional limitations by doing indirectly what the city could not do directly. In such a case the statute should be strictly construed, certainly as much so as if the city were incurring a liability against the municipality itself in the usual way. In *City of Thomasville* v. *Light Co.,* 122 *Ga.* 399 (50 S. E. 169), this court said: "The policy of the law of this State is, and has been since the adoption of the present constitution, opposed to the incurring of debts by towns and cities; and it has therefore become the settled rule that all laws in reference to the course to be followed by the public authorities in obtaining consent to contract a debt in behalf of the taxpayers are to be strictly construed, and the consent of the taxpayers is never held to have been given in any case unless the requirements of the law providing the manner in which the debt shall be incurred have been strictly complied with in every material particular." *Mays* v. *City of Jackson,* 147 *Ga.* 556 (94 S. E. 1006). In this case assessments were made by the municipality on the private property of citizens for public uses, and the principles of estoppel should not be applied to them as in the cases cited in the majority opinion, where improvements were made on the property of the owner for the personal benefit of the owners of the property. Here the contract on which the assessment is made was illegal, because contrary to the express mandatory provisions of the statute under which the

paving was authorized. The paving contractors were bound to know that the contract was illegal. They had. already perfected an arrangement with the local bank to receive the bonds far below par; and there was evidence for the petitioners that the paving improvements were made over their protest and objection. While courts are and should be slow to interfere with public improvements, at the same time the solemn duty rests upon them to protect private property of the citizen; for the constitution, article 1, section 1, paragraph 2 (Civil Code (1910), § 6358), provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete."