BOWER *et al. v.* CITY OF BAINBRIDGE.

No. 6972.   April 13, 1929.   Rehearing denied June 13, 1929.

*Bower & Bower,* for plaintiffs in error.

*Vance Custer Jr. and Tye, Thomson & Tye,* contra.

HINES, J. (After stating the foregoing facts.)

Was the contract for the paving of these sidewalks a valid one? Section 6 of the act of August 10, 1920, amending the charter of the City of Bainbridge (Acts 1920, pp. 741, 743), provides that, thirty days after the date of the passage of an ordinance apportioning and levying assessments for street improvements, the Mayor and Aldermen of the City of Bainbridge shall by resolution provide for the issuance of bonds for the amount of such assessments, and in the manner more fully prescribed in said section. It contains this further provision: "Said bonds shall be sold at not less than par, and the proceeds thereof applied to the payment of the contract price and other expenses, by the said mayor and aldermen, or such bonds in the amount that shall be necessary for that purpose may be turned over and delivered to the contractor at par value in payment of the amount due him on his contract, and the portion thereof which shall be necessary to pay other expenses incident to and incurred in providing for said improvements shall be sold or otherwise disposed of as the mayor and aldermen shall direct." This section prohibited the sale of these bonds at less than par for the purpose of raising funds for the payment of these improvements at the contract price, and prohibited the delivery to the contractor of bonds at less than par in payment of the amount due it on its contract. Does the contract between the

city and the contractor violate, this provision of the charter? If we look to the body of the contract alone, and shut our eyes to the contractor's bid which is attached to and forms a part of the contract, the body of the contract does not violate this provision of the charter. Looking to the body alone the contractor agreed to pave these sidewalks for $1.65 per square yard, and to accept bonds in payment for the work. If nothing further appeared, the contract could not be held to violate the above provision of the charter of the city. But attached to and forming a part of the contract is the bid of the contractor. In its bid the contractor offers to pave these sidewalks for $1.29 per square yard, if paid in cash; but if paid in bonds, it is to do the work for $1.65 per square yard. The city, being able to have this work done for $1.29 per square yard for cash, accepted the alternate bid of the contractor to make these improvements for $1.65 per square yard in bonds. Here we have an indirect but clear violation of the provision of the charter which prohibits the sale or delivery of these bonds to the contractor at less than par. It would be foolish to hold that the city, while it could have the work done for $1.29 per square yard for cash, did not deliver these bonds for less than par in payment of this work at $1.65 per square yard. It is a familiar principle of law that a thing can not be done by indirection which can not be done directly. Under this contract the city was attempting to do by indirection what it could not do directly. When the municipality could have had this work done for $1.29 per square yard for cash, for it to agree to pay for such work at $1.65 per square yard in bonds was a mere bald evasion of the law. For this reason we can not sanction the transaction.

In construing a like provision of the drainage law, we held that drainage bonds could not be sold for less than par, and that the par value of an interest-bearing bond on the date of its issuance is the principal thereof, and on any date thereafter such par value is the sum of the principal and the accrued interest. *Board of Drainage Comm'rs* v. *Arnold,* 156 *Ga.* 733 (120 S. E. 310). Furthermore, before entering into the contract for the paving of these sidewalks, the city entered into an arrangement with certain banks, by which the city was to deliver these bonds to the contractor for these improvements, and the banks were to take them from the contractor at a price less than their face value. So we are of the

opinion that under the contract between the city and the contractor, construed in the light of the latter's bid, and the above arrangement between the city and the banks, the bonds were delivered to the contractor at less than par, and that this was in violation of the above provision of the city charter. It follows that the contract for the paving of these sidewalks was illegal to this extent.

As we hold that the contract for the paving of these sidewalks is illegal to the above extent, what is the effect of the illegality of the contract on the power to make and collect assessments on the abutters' property? In *Sanders* v. *Gainesville,* 141 *Ga.* 441 (81 S. E. 215), this court held that "If a contract for the construction of a public improvement has been let, and an assessment levied to pay such contract price, the validity of such contract is essential to the validity of the assessment; since otherwise the assessment would be levied to pay a claim not legally due against the city." It may be said that this ruling was based upon the ground that a contrary holding would make an assessment leviable to pay a claim not legally due by the city. In the decision in that case it was said: "No lien can be fixed, in invitum, against abutting property to pay an illegal contract made by a city in the construction of a public improvement. Schwiesau *v.* Mahon, 110 Cal. 543 (42 Pac. 1065)." In that case the city was without jurisdiction or power to make the contract on which the assessments were based. In *Montgomery* v. *Atlanta,* 162 *Ga.* 534 (134 S. E. 152, 47 A. L. R. 233), we dealt with the effect of the illegality of the contract upon assessments against owners of abutting property for street improvements, where the city had jurisdiction and power to make the contract, but exercised it in an illegal manner. In that case we held that if there was no valid contract for making the street improvements, due to irregularity and illegality in the exercise of the power conferred upon the city, no assessment could have been levied and enforced against the owners of abutting property, if they had acted promptly in attacking the illegal contract. In *City of Bainbridge* v. *Jester,* 157 *Ga.* 505 (121 S. E. 798, 33 A. L. R. 1406), this question again came before this court, and, without passing upon the legality of the contract involved in that case and in the present case, we held that the property owners were estopped from attacking the validity of the assessment upon the ground that the contract was illegal, the illegality of the con-

tract not arising from lack of jurisdiction or power to make it, but from the illegal exercise of jurisdiction. This question again came before this court in *Floyd* v. *Bainbridge*, 164 *Ga.* 316 (138 S. E. 851). In that case it was stated that the majority of the court in *City of Bainbridge* v. *Jester*, supra, held this contract to be valid and binding. This was a lapsus curiæ. An examination of the *Jester* case will disclose that the majority of the court did not pass upon the validity of this contract and did not hold it to be a valid contract. The plaintiffs in that case came into a court of equity, seeking to enjoin the payment of assessments levied against their abutting property for these improvements; and the majority of this court held that they were estopped, after the contractor had fully complied with his contract and expended large sums of money, and after the paving had been accepted by the city, from attacking the validity of the assessments and of the fi. fas. issued thereon because of an infirmity in the contract, not due to lack of jurisdiction or power to make it. In the *Floyd* case this court applied the ruling in the *Jester* case; and in effect held that Floyd was estopped from attacking the validity of the assessment upon the ground that the contract was illegal, not from lack of jurisdiction to make it, but an illegal exercise of jurisdiction, after the improvements had been completed, and the owners of abutting lots had received the benefit of the sidewalks.

Our holding that there is no estoppel if the defect goes to the jurisdiction or power of the municipality, and is not a mere irregularity in the proceeding, but that there is such estoppel where the illegality is not due to lack of jurisdiction or power, but amounts only to an illegal exercise of jurisdiction or power, seems to be supported by the authority and weight of decisions in other jurisdictions. 4 Dill. Mun. Cor. (5th ed.) § 1455. The better view also seems to be that where such estoppel is operative, such estoppel will be enforced at law or in summary proceedings, as well as where parties are seeking affirmative relief in equity against the enforcement of assessments for street improvements. 2 Paige & Jones on Taxation by Assessment, § 1025. A mere protest against street improvements, or mere threat to take legal proceedings to prevent such improvements, is not sufficient to defeat such estoppel. *Holt* v. *Parsons*, 118 *Ga.* 895 (45 S. E. 690) ; *Raines* v. *Clay*, 161 *Ga.* 574, 577 (131 S. E. 499). We hold in this case that the con-

tract for these street improvements was illegal in so far as the city undertook to deliver these bonds to the contractor at less than par, under the arrangement by which they were delivered to the contractor; but that the same was not void from lack of jurisdiction or power to contract. We are further of the opinion that the owners of lots abutting upon the streets improved were not liable to be assessed for these improvements at more than $1.29 per square yard, instead of $1.65 per square yard. If the affidavit of illegality in this case had alleged payment or tender of the former amount as the true amount due by the defendants to the city for the paving of these sidewalks, it would have set up a good defense; but in the absence of any allegation of payment or tender, the affidavit did not set up a defense. Acts 1921, pp. 741, 744; *Vanduzer* v. *Irvin*, 138 *Ga.* 524 (75 S. E. 649).

■ The headnotes following headnote 2 do not require elaboration or discussion.

*Judgment affirmed. All the Justices concur, except*
GILBERT, J., who dissents for the reasons stated in *City of Bainbridge* v. *Jesler*, 157 *Ga.* at p. 515, and in *Floyd* v. *City of Bainbridge*, 164 *Ga.* 316.